## The People on the relation of The National Life Insurance Company of Chicago v. The State Commissioner of Insurance.

*Commissioner of insurance: License: Revocation.* The commissioner of insurance cannot lawfully revoke a license except on the investigation and proceedings, and in the particular cases, fixed by the statutes.

*Insurance company doing business in way prohibited by law: License.* But where a company is doing business in a way absolutely prohibited by law,—although

not within the jurisdiction of the commissioner for a revocation of license,—the court can give no relief against his action in revoking their license, inasmuch as the corporation is entitled to no rights whatever to do business in the state.

*Statute construed.*    The insurance law of 1872 (*Sess. L., 1872, p. 86*) forbids the transaction of insurance business by companies that do not distinctly show by their policies the amount of life benefits assured, and that do not make premiums fixed, and not contingent on losses.

*Heard and decided July 10.*

Application for *mandamus.*

The petition alleges that the National Life Insurance Company is a corporation incorporated under the laws of the state of Illinois, having its principal office at Chicago; that previous to February 2, 1871, it complied with all the laws of the state of Michigan prescribing the terms and conditions upon which foreign insurance companies are permitted to transact the business of life insurance within said state, and that a license to do business within the state was issued to it by the Secretary of State; that on March 29, 1872, the legislature of this state passed an act amending the twenty-ninth section of the act in relation to the transaction of business of life insurance within the state by foreign companies; that after the passage of said act the commissioner of insurance refused to renew the license of said company on the grounds: 1. That the form of contract of insurance used by said company did not distinctly state therein the amount insured, or life benefits; 2. That it did not distinctly state therein the period of continuance; 3. That no definite premium was stated *therein;* 4. That the payment of the life benefit was, under said form of contract, contingent upon assessments upon surviving members; that said commissioner thereupon issued and published an order requiring said company to cease doing the business of life insurance within this state; that this action was based upon the ground that the form of contract used by said company was in conflict with said

amendatory act; and that said company had in all other respects conformed to the law, and was qualified to transact business within said state.      :

A copy of the form of policy used by said company was annexed to the petition, and is as follows, viz:

"National Life Insurance Company of Chicago.    Each series limited to two thousand five hundred memberships. One or two memberships in full series at one dollar each, —five thousand dollars.    Purely reciprocal.

"This term policy and certificate of two memberships witnesseth: That the National Life Insurance Company of Chicago accepts the trust as herein set forth, and in consideration of the representations made to them in the application for this certificate, and the sum of twenty-seven dollars, to them duly paid by ———, and also the additional sum of four dollars, as a deposit to pay for death losses of two memberships when they shall occur, and of the annual sum of ten dollars on this certificate held by the insured, to be paid to said company on or before the first day of January, in each and every year, and of the further payment of all future assessments of eight dollars and eighty cents each, in advance, for death losses of four memberships in this division and series during the continuance of this certificate, each assessment to be made after due proofs of deaths are received by said company, the payment of which would reduce the amount deposited to the credit of this certificate to four dollars (except in the case of the first deposit of four dollars, which shall be entirely exhausted before another assessment is made), does hereby constitute ——— of ——— county of ——— state of ——— a member, with two memberships in the reciprocal department of the National Life Insurance Company of Chicago, subject to the conditions and agreements hereinafter mentioned. The National Life Insurance Company hereby promises and

agrees, after due notice and satisfactory proof of the death of the said ——— has been received at the home office of the company at Chicago, and within ninety days from the date of the receipt of said proof of death, to pay to ——— or —— legal representatives, at the office of the company in Chicago, Illinois, two dollars for each membership in this division and series who has made a deposit for the payment of said death loss. And for the term of three years. from the 31st day of December, 1871, for, during, and until the 1st day of January, 1875, said company hereby guarantee that at least two thousand dollars shall be paid on this certificate, if in force, should death occur during that time, and at the end of such term this 'guarantee of the payment of at least two thousand dollars' shall cease and. determine, and after that time the two dollars on each, membership received on deposit for death losses of two memberships, shall be paid as before stated.

"The company further agrees, after the receipt of proofs of deaths of members, the payment of which would reduce the amount deposited to the credit of this certificate to four dollars (except in the case of the first deposit of four dollars, which shall be entirely exhausted before another assessment is made), to make an assessment of four dollars and forty cents on every membership in the class, in advance, as a deposit to pay the next death losses, and so on, four dollars and forty cents per membership at a time as above, being an assessment of eight dollars and eighty cents on this certificate for two memberships.

"The number of members in said class, after the death of a member, shall be ascertained according to the conditions hereinafter expressed.

"This certificate is issued and accepted by the above named member, upon the following expressed conditions. and agreements.

"1. The above named member hereby agrees to forward to this company the annual sum of ten dollars on this certificate of membership, on or before the first day of January, in each and every year during the continuance of this certificate; and the said member further agrees that if the said annual dues of ten dollars on this certificate is not received by the company, at the home office in Chicago, at the date when due, then this membership shall cease, and this certificate, with all its agreements and guarantees, shall be null and void, and of no effect.

"2. The above named member further agrees to pay to the company for this certificate of membership, in addition to the amount already named, the sum of eight dollars and eighty cents (eight dollars of which is for a deposit or insurance reserve, on account of this certificate, and the eighty cents to pay expenses of collection and settling losses), within thirty days from the date when the company shall mail said insured a notice of the death of members sufficient to reduce all previous deposits to four dollars, except in case of the first deposit of four dollars, which shall be entirely exhausted; and the said member further agrees that if the said assessment shall not be received by the company at the home office in Chicago, within thirty days from the date of said notice, then this membership shall cease, and this certificate, with all its agreements and guarantees, shall be null and void, and of no effect.

"3. A printed or written notice, or a notice printed in a paper published by the company, directed to the address of each and every member, as it appears in the application or on the books of the company, and deposited in the post-office, shall be deemed a legal notice. In order to ascertain the number of members in the class, on the death of any member, the memberships in the name of those members who shall have refused or neglected to pay their annual dues at the time above specified, without further notice,

and also all assessments for death, according to the conditions herein expressed, shall be deducted from the list of members, and shall not be counted.

" 4. Due notice must be given to the secretary of the company, by each and every member, of all the changes of his or her residence, post-office address, occupation, or name.

" 5. If the said assured shall, without the consent of this company previously obtained in writing, engage in the manufacture of gunpowder, fireworks, or in submarine operations, or coal mining, or shall be personally engaged in the production or transportation of highly inflammable or explosive substances, or engage in any extra hazardous occupation, or enter any military or naval service whatsoever (except the militia, when not in actual service), or shall die in consequence of a duel, or of the violation of the laws (civil or military) of any nation, state, or province, or shall become so far intemperate as to seriously or permanently impair his or her health, or produce delirium tremens; or in case the answers or declarations made in the application for this certificate shall be found in any respect untrue, then this membership shall cease, and this certificate, with all its agreements and guarantees, shall be null and void, and in every such case the company shall not be liable.

" 6. In case the above membership shall cease, this certificate, with all its agreements and guarantees, shall become null and void, and all previous payments made thereon shall be forfeited to the company.

" 7. All members are at liberty to travel by sea, lake or river, by first class steamers or sailing vessels, and by land, to any part of the known world.

" 8. No assignment of this policy is valid without written consent of the company.

" In witness whereof," etc.

" N. B.—No agent of this company is authorized to

receive assessments or annual dues, other than the payments required to be made on delivery of this policy; and any person so receiving and transmitting assessments or annual dues, does it as agent of the insured, and not as agent of this company."

The prayer was for a writ of *mandamus* commanding the commissioner of insurance to revoke his aforesaid order, and to issue and grant to said company a license to transact its business of life insurance in this state, under the laws thereof.

To this petition a demurrer was interposed.

*Dwight May, Attorney General,* for the respondent.

*G. V. N. Lothrop,* for the relator.

PER CURIAM.

We think the relator comes within more than one of the prohibitions of the amendatory statute of March 29, 1872. As the company does not guarantee the payment of more than a certain portion of the sum insured, and does not guarantee any part of it absolutely, after the year 1875, we think it must be held that the contract of insurance does not "distinctly state therein the amount of such life benefits," but leaves that amount uncertain and contingent; and that this is a prominent mischief aimed at by the statute.

The law also requires "the amount of the annual, semi-annual, or quarterly premium" to be expressed, and forbids any arrangement whereby "the payment of the life benefit assured shall be contingent upon the payment of assessments made upon surviving members." These clauses have a bearing upon each other, and we think the meaning is obvious. It is to distinguish between companies which require each person insured to pay a certain premium

periodically and at all events, and those which require pay-
ments to be made, in whole or in part, contingently upon
the death of members, in which latter case, although it
may happen that there will be funds enough in advance of
any death to pay the loss, yet there is no absolute guar-
anty to that effect, and no certainty of funds to do it.
The provision making payments from members dependent,
for their amount, on deaths that have already happened,
indicates that such payments are contemplated as possible,
if not probable or certain, resources necessary to provide
for paying accrued losses.    We think the law requires both
fixed premiums, and payments contracted, to be made with-
out regard to *post mortem* assessments, and that the insur-
ances made by this company are obnoxious to both prohi-
bitions.

If the commissioner has actually revoked an existing
license, which, as the case comes up on demurrer, will be
assumed for the purposes of this decision, we think his
action would not come within the power granted by section
twelve of the insurance law.    That provides that, in cer-
tain contingencies, he may cause an examination and
inquiries to be made to obtain full information of the con-
dition of a suspected company, and in case he finds it
unsafe, he may revoke the license.    It does not provide for
such revocation without such process, nor for other causes
than those defined.    Doing business contrary to the law of
1872 is not one of those causes; and there have been no
proceedings in conformity with law.    His action, therefore,
would not destroy a license lawfully existing.

But, inasmuch as the law of 1872 absolutely prohibits
a company such as the relator is shown to be, from doing
any business in the state, whether licensed before or not, it
can have no right to ask any relief, or to require any
official action in its favor.

The *mandamus* must be denied, with costs.