# JUNE TERM, 1876.

---

## John Anderson and others v. Moses Walter.

*Promissory notes: Rule 79: Denying execution: Affidavit.* An affidavit under rule 79, which, while admitting the signature to the note declared upon appeared to be defendant's genuine signature, avers that the same was obtained under circumstances, fully set forth, which would render him not liable thereon, is held sufficient to put the plaintiff to the proof of the execution and delivery of the note sued upon.

*Fraud: Evidence: Cross-examination.* Where the defense of fraud is set up, a wide latitude should be allowed upon the cross-examination of a witness who was a participant in the transaction, and much must be left to the discretion of the trial court.

*Charge to the jury: Construction: Repetitions.* The charge to the jury must be considered and construed as a whole, in the same connected way in which it was given, and upon the assumption that the jury did not over-look any portion, but gave due and equal weight to every part; and where the effect of defendant's negligence in signing papers has been once clearly and properly stated, it is not necessary to incorporate and repeat that instruction with every other portion of the charge upon which it has any bearing, unless it is apparent that otherwise the jury might be misled.

*Promissory notes: Negligence in executing and putting in circulation: Good faith.* While there may be cases where one signing and putting in cir-culation an instrument should be bound by the terms thereof, even though it turned out different from what he supposed it to be, this rule does not go so far as to require a party signing in good faith what he has heard read, and what purports to be a power of attorney, contract, deed, mortgage, or similar instrument, to be held liable in case a nego-tiable note of that date, of which he had no notice or intimation, should have been mysteriously lurking in the depths of the instrument so signed, and should afterwards turn up with his signature attached to it.

*Promissory notes: Negligence: Charge to the jury.* In an action upon a promissory note, where the evidence on plaintiff's behalf tends to show that defendant knowingly and deliberately signed and delivered the note at the same time that he executed two other papers, and that on defend-ant's behalf, that only the two other papers, duplicate agency contracts, were executed or mentioned or read to him, and that there was no talk of a note, and no note shown or signed, there is no basis for pre-senting to the consideration of the jury the question of the effect of defendant's negligence in signing and putting in circulation the note in question.

34 MICH.—15.

ANDERSON *v.* WALTER.

*Contracts: Negligence in executing: Comparison.* Where a party to an instrument undertakes to read it over in the presence and hearing of the other party thereto, in order that he may understand its contents before signing it, the party reading is both legally and morally bound to read it correctly, and the other interested party has a right to rely upon its being so read, and is not guilty of negligence in signing it without further examination.

*Heard April 6 and 7.    Decided June 6.*

Error to St. Joseph Circuit.

*Upson & Thompson,* for plaintiffs in error.

*H. H. Riley,* for defendant in error.

MARSTON, J:

Plaintiffs in error, claiming to be *bona fide* holders of a negotiable promissory note executed by the defendant, brought an action of assumpsit to recover the amount thereof. The defendant pleaded the general issue, and filed therewith an affidavit setting forth that the signature to the note declared upon he believed to be his, but that the same was procured under circumstances, fully set forth, which would render him not liable thereon.

Upon the trial, after plaintiffs had introduced evidence tending to show that they were *bona fide* holders, which was not disputed, the defendant offered evidence tending to show that he never signed the note. This was objected to as irrelevant and immaterial, and also because the defendant, in the affidavit attached to his plea, had not denied its execution. This latter objection was made and overruled several times during the progress of the trial, and indeed forms the basis for most of the plaintiffs' exceptions.

As was said in *McCormick v. Bay City, 23 Mich., 457,* "We do not think an affidavit of this kind should be subjected to any very technical rules of construction. If it appears that a defendant means to contest the execution or delivery in good faith, any legal questions concerning the sufficiency of the defense should be reserved for the trial,

ANDERSON v. WALTER.

when the facts could all be presented. It never was designed that a defendant should be compelled in his affidavit to state every fact, but merely to indicate his defense or to make a plain denial." Tested by this rule, the affidavit in this case could not be treated as an admission of valid execution. A defendant cannot be required to swear that the signature appearing upon an instrument is not his genuine signature in order to deny the execution. The signature may be genuine, and yet the instrument a forgery. In such a case he could not deny the signature under oath. He would admit it, but set up facts from which it would appear that he was not bound by, or ever executed the instrument sued upon. We think the denial in this case was sufficient, and it will not be necessary to consider this question again in reference to the modifications of plaintiffs' requests to charge, which assumed the contrary.

The court permitted defendant's counsel, upon cross-examination of plaintiffs' witness Simons, to inquire of him respecting what took place the next day between Kimball, the payee of the note, and other parties concerning similar transactions. Simons had testified that he was present at the time the note in question was executed and delivered by defendant to Kimball, and that he was there as the agent or servant of Kimball. The defense claimed that the signature to the note, if signed at all by the defendant, was obtained under false and fraudulent circumstances, and that Simons was a party to the fraudulent transaction. As tending to show this, and for the purpose of affecting his credibility as a witness, they made these inquiries. In cases of this kind a very wide latitude should be allowed upon cross-examination. Much must be left to the discretion of the trial judge. We think the inquiry was pertinent and proper to go before the jury to be considered by them in weighing Simon's testimony.—*Bissell v. Starr, 32 Mich., 297.*

The most important questions yet remain to be considered. The execution of the note having been denied, plain-

tiffs introduced evidence tending to show that defendant did sign it, and they claimed that even if he did not knowingly and willingly sign the note, yet that he was guilty of such negligence in signing it that they as *bona fide* holders were entitled to recover. In order to fully understand and appreciate the charge of the court as given, and the refusals to charge complained of, it becomes necessary to quote at some length the evidence given in the case bearing upon the question of execution. Two witnesses only were examined upon this branch of the case: one, the defendant; the other, J. W. Simons, who was present with Kimball at the time, as claimed, the note was signed by the defendant.

There was no dispute but that on the day the note purported to have been executed, F. M. Kimball, accompanied by Simons, visited defendant at his residence; that Kimball sought to and did induce defendant to agree to act as an agent for the sale of a sulky wheel cultivator, and that an agreement in duplicate to that effect was then signed by both Kimball and defendant, each retaining a copy.

Defendant testified, after speaking of the inducements held out to him to become an agent: "I finally said, I will take the agency, if it wouldn't be any thing out of my pocket at all, and do what I could; if I could sell any it was good, and if I couldn't it was good, and so at last I agreed to go agent; and I asked him how long the agency should last, and he said from one year to ten,—I could throw it up any time I had a mind to. So at last I consented, and he went to filling out them two papers. He took them out of a satchel, I believe. The paper now shown me is one of them that I signed. After he took the papers out he gave me one. I am a poor scholar. I can read the writing. I can read this here. And he told me I should follow him, and he commenced reading, and he read so fast that I couldn't keep up. I was standing there; Simons was in the buggy.   *   *   *   I would not like to tell you that he read the instrument through; I couldn't tell you, he read so fast. I am a poor scholar. I can't

road it.   *   *   I signed it out there in the road.  I had
a corn basket, and I think I laid both the papers down on
it at a time and signed them; nothing on the corn basket
but the two papers, and I signed them out there on the
cover of the corn basket.   After the signature to the two
papers was made by me he read them again.   He wanted
me to look for him, and he read the other to see if they
would correspond.   He held one and I held the other one.
*   *   I saw no such note as the one now shown me at
that time.   I never signed that note knowing it to be a
note; never showed me a note to sign.   I signed nothing
only the two papers.   *   *   *   There was nothing said
during that conversation between me and Mr. Kimball about
a promissory note.   *   *   *   Kimball said nothing to
me about security.   I signed only two times.   The signa-
ture to the note in suit shown me is similar to my hand-
writing, but I never signed that note.   It was never pre-
sented to me."

Simons testified: "I know defendant; have seen note in
suit before; first saw it on the day it was given.   I saw it
signed and executed.   Mr. Walter signed it.   I was sitting
in a buggy in front of his house at the time.   It was in a
small note book when he signed it.   *   *   The note was
dated on the day it was signed.   I saw Moses Walter sign
three papers,—two agency papers,—and one he kept and one
Mr. Kimball kept.   This note was executed there in a book.
The agency papers were signed first.   *   *   *   He (Wal-
ter) spoke of several neighbors who thought of getting cul-
tivators, and he thought he could sell them some, and he
finally concluded that he would take the agency, and Mr.
Kimball went on and drew up the agency papers, and also
the note in the note book.   Mr. Walter signed the agency
papers, and also the note in the note book.   Mr. Walter
signed the agency papers, and Mr. Kimball handed him the
note book, and Mr. Walter read it, or a portion of it.   He
continued to read it, but some words he could not make out
very distinctly, and Mr. Kimball assisted him in reading

the note and Mr. Walter signed it.     *     *     Before he signed the note Mr. Kimball took out his note book and said he always took a note for two hundred dollars.     Mr. Walter said he thought the first year he could pay his note by the machines he would sell."

It will thus be seen that the tendency of this evidence leads in but two directions.     If Simons was correct, there could be no question but the note was genuine and that defendant was liable; while if defendant's testimony was true, the note was simply and purely a forgery.     There was no middle ground.     If, as defendant testified, he signed but two papers, viz.: duplicates of the instrument appointing him agent, and that he saw no note and signed no note, it would be difficult to get up any sound theory upon which the plaintiffs would be entitled to recover.     As the testimony stood no dispute could, and none did arise, as to what the charge should have been, assuming Simons' testimony to be true.     The only ground upon which plaintiffs' counsel claimed the right to recover, in case the jury found defendant's testimony to be true was, that he admitted signing a paper, viz.: the duplicate agency agreement, and which in the affidavit attached to his plea was called a bond, by which he obligated and intended to bind himself to pay two hundred dollars, and which he thus put in circulation voluntarily; and the fact that it turned out to be a different obligation from the one he supposed it to be, was no defense as against plaintiffs.     Such being the testimony and theory of counsel, the court upon this part of the case charged the jury, under plaintiffs' sixth request as modified: "If the defendant was guilty of negligence in signing the note, if you find he did sign it, and had ample means or good reason to know that he was signing a note at the time he subscribed his name to the note in question, the plaintiffs are entitled to recover."     And at defendant's request the court charged:

1.  "The defendant Walter is sued in this case upon a promissory note, which, it is claimed by the plaintiffs,

he signed and delivered as a note. If it appears from the evidence that Walter did not know he was signing the note when it is claimed that his signature thereto was obtained, he cannot be held liable upon it, provided he was guilty of no negligence in signing it."

2. "If Walter never bargained to sign the note, or to give a note, and did not suppose or believe he signed such an instrument, but was in fact only to sign the other papers he had heard read, and believed he had only signed them, the note is void in the hands of the present holders, and the plaintiffs cannot recover upon it."

From this it will be seen that the court in the sixth request of counsel for plaintiffs, and the first for defendant, as given, clearly, and as favorably as plaintiffs were entitled to, submitted the question of defendant's negligence in signing the note, if he did sign it, to the jury, and it was not necessary to repeat the instructions so given. The jury having been properly instructed as to the effect his negligence in signing the papers would have, if they found that one of the papers so signed turned out to be this note, it was not necessary to incorporate that part of the charge into every other portion, unless it was apparent that otherwise the jury might have been misled by the omission. The charge was given and understood by the jury as a whole, although contained in separate paragraphs or requests and originating with different counsel, and we must examine it in the same connected way in which it was given to the jury, and upon the assumption that they did not overlook, but gave due and equal weight to each and every part.

But this second request of defendant's, as given, I think, standing alone, would not be open to objection. If the defendant never agreed to sign or give a note, and did not suppose or believe he was signing one, but was in fact only to sign, and believed he only was signing, the paper he had heard read, appointing him agent to sell the cultivator, it is somewhat difficult to see how he could be held liable upon this note; and it is equally difficult to see how a man signing

under such circumstances and under such a belief could at the same time be considered negligent.    If he had not agreed to sign a note, but to sign, and believed he was sign-ing, other papers, which he had heard read, and which in no way resembled in size or appearance a note, and which by no possibility could be tortured into a negotiable note, or by any ordinary change converted into one, he could not be considered guilty of negligence in so signing, even if it after-wards turned out in some mysterious manner that one of the papers he supposed he was signing was a note.    Under such circumstances he had no intention of signing a note, but an instrument of an entirely different shape and tenor; that it should turn out to be a note would be certainly through no fault or want of caution on his part.

Nor, in my opinion, does the fact that the instrument appointing him agent contained the recital that it was "for and in consideration of the profits of ten machines, being the sum of two hundred dollars, to me in hand paid by note bearing even date, the receipt whereof," etc., make any dif-ference.    The words "by note bearing even date" were interlined, and it was a disputed question on the trial whether those words were not interlined after the paper had been read over to defendant, and without his knowledge.    But however this may have been, the fact still remained that defendant at no time intended to or supposed he was sign-ing a note, or that the obligation to pay two hundred dol-lars, as contained in the instrument he supposed he was signing, could become in any way a negotiable instrument. I concede there may be cases where a party signing and putting in circulation an instrument should be bound by the terms thereof, even though it turned out different from what he supposed it to be; but such cases cannot be carried so far as to hold that a party signing in good faith what he has heard read, and what purports to be a power of attorney, contract, deed, mortgage, or any similar instrument, shall afterwards be held liable in case a negotiable note of that date, which he did not know or suppose he was signing,

ANDERSON *v.* WALTER.

turns up. No man has a right to suppose that a crime is about to be committed, or that he is going to be defrauded by having a paper of an entirely different tenor substituted in the place of one he has just heard read and is about to sign, nor that a negotiable promissory note will be lurking in the depths of an instrument like those referred to. And he is not therefore required to take any steps to guard against such a contingency.

It may, however, be a question of considerable doubt whether there was any evidence in the case tending to show negligence on the part of the defendant, and any question of negligence, therefore, to submit to the jury. There certainly is no such tendency in the testimony of Simons. He testified that the duplicate agreement was read, compared and signed; that a book of blank notes was produced, a note filled up therein, read over by defendant with Kimball's assistance and then signed; that three papers were signed, the agreement in duplicate and the note. His evidence was direct and positive, that defendant knowingly and willingly signed the note in suit, and it excluded all question of negligence in any degree. When we turn to defendant's testimony, we find he is equally clear that he signed only two papers, viz.: the agency agreement in duplicate; that nothing was said about a note; he saw no note; that the note in suit was not presented to him and he never signed it, and there was nothing in his testimony on the stand, so far as appears from the record, tending to show that the signature to the note was genuine, whether obtained through carelessness or otherwise. The question presented from the testimony of these two witnesses upon the trial was one simply of a genuine note knowingly and willingly given, or a forgery. It is true the bill of exceptions does not contain all the evidence, but the burden is upon plaintiffs in error to show error affirmatively, and when they complain that the question of negligence was not properly submitted to the jury, they must show that there was evidence introduced on the trial to warrant such a charge.

31 MICH.—16.

The case in this respect was different from *Gibbs v. Lin-abury*, *22 Mich.*, *479*. There the defendant testified that he actually signed three papers, two only of which were read or compared, but with the assurance that the third was just like them; that nothing was said about a note, nor did he sign, nor was he requested to sign such a paper; that if the signature to the paper read in evidence as a note was his, it was obtained as before stated. In this case defendant does not testify, nor was there any such evidence given, that he signed any paper upon any representation or assurance that it was like those he had heard read. He signed only two papers which he had heard read, and neither of them was this note, and that he did not sign the note in question. I am of opinion that this case comes clearly within the principle of *Gibbs v. Linabury*.

We discover no error in the giving of defendant's third request. There was evidence tending to show that defendant could read but very little; that the paper constituting him agent was read over to him by Kimball, and that it was not read correctly, part having been omitted. It would seem to be a self-evident proposition that where a party to an instrument undertakes to read it over in the presence and hearing of the other party thereto, in order that he may understand its contents before signing it, the party reading is both legally and morally bound to read it correctly, and that the other interested party has a right to rely upon its being so read and need not examine it himself. These papers were compared in the usual and customary manner, and ordinarily no negligence can be attributed to one who signs papers, after having so heard them compared, without any farther or other examination.

There being no error in the record, the judgment must be affirmed, with costs.

The other Justices concurred.