BARNETT *v*. FARMERS' MUTUAL FIRE INSURANCE CO. OF ALLEGAN AND OTTAWA COUNTIES.

1. FIRE INSURANCE—ACTION ON POLICY—DEFENSES—ORDER OF PROOF.

In an action upon a fire-insurance policy, evidence tending to show that defendant is estopped to rely upon the defense set up in its special notice is no part of plaintiff's original case, and is properly excluded when offered as such.

2. SAME—WILLFUL BURNING—ESTOPPEL.

A fire-insurance company is not estopped to defend an action upon a policy, on the ground that plaintiff willfully burned the property insured, by the fact that one of its officers made a criminal complaint against plaintiff for such burning, and that plaintiff was discharged upon the examination, or by the fact that, with knowledge of all the circumstances, it demanded and collected an assessment from him for the loss of his property.

3. SAME—CROSS-EXAMINATION.

In an action upon a fire-insurance policy, where the defense set up is a willful burning of the property insured, the plaintiff may be cross-examined as to his alleged fraudulent conduct with respect to insurance upon other property.

4. SAME—MOTIVE—EVIDENCE.

In such case, defendant may show that there had been trouble in plaintiff's family, as bearing upon a motive for the burning.

5. TRIAL—INCOMPETENT EVIDENCE—WAIVER.

A party cannot complain of the erroneous admission of testimony where he first introduced testimony to the same effect.

6. SAME—CURING ERROR.

Error in receiving incompetent evidence is sufficiently cured by the court's striking it out on motion; at least where no request is preferred for a specific instruction that it be disregarded by the jury.

7. SAME—INSUFFICIENT INSTRUCTIONS.

The insufficiency of the instructions upon a particular branch of the case is not ground for reversal where no request was made for more specific instructions.

Error to Ottawa; Padgham, J.    Submitted October 8, 1897.   Decided December 15, 1897.

*Assumpsit* by John Barnett against the Farmers' Mutual Fire Insurance Company of Allegan and Ottawa Counties on a policy of insurance.   From a judgment for defendant, plaintiff brings error.   Affirmed.

*Walter I. Lillie*, for appellant.

*C. R. Wilkes*, for appellee.

LONG, C. J.   This action is upon an insurance policy, to recover for the loss by fire of a barn and its contents. The defendant gave notice, under the plea of the general issue, that it would show that plaintiff willfully burned the barn, with intent to injure the defendant.   That was the only issue tried, and upon it the jury found in favor of defendant.

It appears that plaintiff's barn and contents burned on the night of July 2, 1896.   His family at home consisted of his wife, two sons, and a daughter.   Prior to this time he had had serious trouble with his family, resulting in his leaving home.   His son Thomas worked the farm on shares in 1895, and claimed the right to work it for the year 1896.   This was disputed by plaintiff, and he tried to eject the son by force, which resulted in a fight, in which revolvers and clubs were used.   For about 10 days before the fire, plaintiff had been boarding at Coopersville, distant about four miles from the farm, with Mr. Reynolds, whom he tried to induce to go with him to eject his sons from the farm.   This, Reynolds refused to do, but told him to get Mr. McInnis, who was a strong man, to go with him.   It also appears that, on the morning of the night of the fire, plaintiff met his wife at Coopersville, and tried to make a settlement of the property matters.   He had filed a bill against her for divorce, charging her with extreme cruelty.   No settlement was reached.   Plaintiff then started to see McInnis, about 7½

miles from Coopersville, and reached there about 5 o'clock in the afternoon of that day. McInnis would not accompany him, and plaintiff claims that he then started to return to Coopersville. The barn and contents were burned that night about 11 o'clock.

The son Thomas had been from home, and returned just before 11 o'clock. He testified that he thought the barn doors looked different than usual, and he was afraid to go into it, so he turned the horse loose, and put the buggy and harness in a shed. About 20 minutes later, the barn was seen to be on fire. The next morning fresh tracks were found in the lane, that had evidently been made the night before. This lane extended from the barnyard west about 100 rods, and the tracks were of a man going towards the barn, and from it, the whole length of the lane. These tracks were peculiar,—were made by a shoe having a half sole, and toed out in an unusual manner. Measurements were made of them, and they were found to exactly correspond with tracks made by the plaintiff. A deputy sheriff called upon the plaintiff the next morning after the fire, and he made contradictory statements as to his whereabouts the night before,—not only to the deputy sheriff, but to others. He claimed to some of the parties that he slept in a barn the night before, but could not find it again. To others he said that he had stopped in several barns. On the trial he stated that he went into only one barn, but did not lie down,—only sat down a few minutes. No one saw him that night on his way from visiting McInnis to the time of his arrival at Coopersville. The next day after the fire, he was arrested for burning the barn.

On the present trial, plaintiff's counsel, before any witnesses were sworn, offered in evidence the complaint and warrant, for the purpose of showing that his arrest was caused by a director of the insurance company. Counsel further stated that he proposed to follow it up by showing that the plaintiff was discharged on that examination, that the secretary of the company was then present, and

that the insurance company is now estopped from setting up the defense that the plaintiff burned his own property. Defendant objected to the complaint and warrant's being received. The court stated: "I think, at this time, I will sustain the objection." It was not admitted that this was the original complaint and warrant, and there was no proof that it was; but, even if it had been, the court was not in error in ruling against its admission at that stage of the case. It was no part of the plaintiff's case; and, even if the complaint and warrant had been received in evidence, the fact that the complaint was made by an officer of the defendant company would not, of itself, estop the company from making the defense in the civil action that the plaintiff willfully set fire to the building, though he had been discharged on the examination.

Plaintiff was asked about his arrest, and stated that he was arrested, and put under $2,000 bonds, and, not getting the bonds, he was put in jail. This testimony was stricken out. Error is assigned upon this ruling. There was no error in this. But, even if there had been, his counsel, later in the case, again called his attention to the fact, and he stated that he was in jail for seven days under that arrest, and that the secretary and one of the directors of the company were present at his examination; thus showing that the defendant company had knowledge of his arrest.

On his cross-examination he was asked about some insurance that he had had in another company, in which claim was made that a cow was killed by lightning. He testified that the cow was killed, but said that he could not remember whether the insurance company paid for her or not, though the policy was canceled. He stated further that his wife and his brother made the claim. He was asked, "Was it a false claim?" This was objected to, and the objection overruled, and witness answered, "Why, I could not say it was, because I am under the belief that the cow was killed by lightning." If anything prejudicial to the plaintiff could be seen in

this question and answer, we think the question a proper one. The defense was that plaintiff burned his own barn to get this insurance, and involved the fraudulent conduct of the plaintiff. Great latitude in cross-examination is allowed in such cases. *Comstock* v. *Smith*, 20 Mich. 338; *Anderson* v. *Walter*, 34 Mich. 113; *Wilbur* v. *Flood*, 16 Mich. 40 (93 Am. Dec. 203).

Some contention is made that the court was in error in permitting the defendant to show that there had been trouble in the plaintiff's family. But plaintiff's counsel was permitted to go fully into that question in his direct case. The plaintiff testified that his children had driven him away from home, and forbade his coming back. His counsel offered in evidence the bill filed for divorce. The testimony drawn out by defendant was also competent as bearing upon the motive the plaintiff might have had for burning the barn.

Counsel for plaintiff also contends that the court was in error in refusing to give the following request in his charge to the jury:

"If the jury find from the evidence in this cause that the loss mentioned in the plaintiff's declaration occurred on the 2d day of July, 1896, and that on the 3d day of July, 1896, the said plaintiff was arrested, charged with willfully and maliciously burning the property, the value of which is sought to be recovered in this suit, had his examination a week later, and that at said examination the secretary of said company was present, and one of the directors of said company was also present, and the authorized agent was also present, and heard the proof before the magistrate at the examination, and that the declaration in this cause was filed on the 17th day of September, 1896, and served on the defendant company on the 19th day of September, and that said company filed its plea and notice to said declaration on the 3d day of October, 1896, setting up in its said notice that said plaintiff was not entitled to recover in said action, for the reason that he had himself burned, or caused the property mentioned to be burned himself; and you also find from the evidence in this cause that afterwards, and on the 10th day of October, 1896, the said defendant, by its

authorized agent, caused a notice of assessment to be made and served upon said plaintiff, stating therein that 'at a meeting of the board of directors held July 28, 1896, an assessment of two and one-half mills per dollar on the capital stock of the company was ordered, to take effect October 10, 1896,' and also notifying said plaintiff that he was required to pay the sum of three dollars, as his assessment on the insurance policy upon which the present suit is brought, within 30 days; and you further find from the evidence in this case that the said plaintiff paid said assessment on the 31st day of October, 1896; and you further find that no notice of cancellation was at this time served upon this plaintiff by the said defendant; and you further find from the evidence that the defendant company knew of the facts and circumstances connected with the burning of said property at the time said last-mentioned assessment was made, and notice thereof given to said plaintiff, and at the time of the payment thereof,—then I charge you that a demand and receipt of assessments after knowledge of loss and facts which would avoid the policy, if you should so find, would estop the defendant company from now claiming that, from any act on the part of the plaintiff, it, the said defendant company, is not liable on said policy of insurance; that if, with full knowledge of the facts and circumstances, it assessed the plaintiff on this policy, it would be a waiver of its right to defend on that ground, the same as if the plaintiff had not paid an assessment due at the time of the fire, and after the fire he paid the assessment, which was received by the company. This receiving of the assessment after the fire, which was due before the fire, would be a waiver of the forfeiture for nonpayment of assessments due. But I charge you that the waiver, if any, depends upon whether, under the evidence, you find that the company knew of the facts and circumstances it claims are connected with said fire at the time this assessment was made and paid; for, if it did not, there would be no estoppel, and it could still make the defense."

The defendant is a mutual insurance company. The policy provides that "any member may withdraw by returning his or her policy, and by paying all assessments made, or liable to be made, for previous losses, and debts and claims then due, or liable to become due, from such member to the company." Section 16 of the charter pro-

vides that "every member shall be equally and ratably assessed in proportion to the amount of his or her insurance, * * * except as to members who have been insured in the company less than one year prior to the date of any assessment." The plaintiff received notice of assessment, and paid it; and, as counsel for defendant well says, there is nothing in the record showing that this was not for an existing debt of the company. But the company would not be estopped from making this defense if the assessment had been shown to have been made for the loss of his own property. The jury found by their verdict that the plaintiff burned the barn. The doctrine of estoppel rests upon very different grounds. In *Crane v. Reeder*, 25 Mich. 321, it was said:

"To entitle a party to insist upon an estoppel, he must be able to show that the other party has done something or represented something which has had the effect to deceive and mislead him, and which would render it inequitable for the right of such other party to be now enforced against him."

As was said in *Ladd v. Brown*, 94 Mich. 139:

"The doctrine of estoppel is applied to prevent injustice, not to relieve parties from the obligations of their contracts; and the conduct of the party claimed to have been estopped must have been such as to have misled the party setting up the estoppel into a course to his prejudice, or induced him to do what he otherwise would not have done."

Another question relates to the failure of the court to charge in reference to certain testimony which the court permitted the defendant to give, but which was afterwards stricken out. Mr. Giddis lives about a quarter of a mile from this barn, and west of Conklin. There is a fence, extending east and west, near his house. He testified that he heard a dog bark on the night of July 2d, and, going to the window, he heard a person climb over the fence, and walk through the field, towards the Barnett place. On cross-examination he testified that it was dark, and that he could not tell what it was; he only heard some-

thing. Mr. Reed, also, was called, and testified to seeing tracks, some distance from Mr. Giddis' house, leading towards the Barnett barn. There was no evidence showing that they were the tracks made by the plaintiff, or that there was any peculiarity about them. On motion of plaintiff's counsel, the court struck out the testimony of both these witnesses,—Giddis and Reed. It is contended that the admission of this testimony was prejudicial to the plaintiff, and the fact that it was stricken out did not right the matter with the jury; that the court should have spoken of it in its charge, and directed the jury that it must be disregarded. At least, this is the substance of the contention of counsel. No request to charge upon this matter was tendered to the court. If counsel thought it needed some special attention, he should have called the attention of the court to it, in a request to charge, especially when the court stated so plainly to the jury that it was not to be considered in the case.

Complaint is made that the court did not sufficiently charge the jury upon the question of circumstantial evidence. No request was presented upon this question, and, as before stated, if counsel desired more specific instruction he should have asked it.

Some other questions are raised, which we have carefully examined, but do not feel called upon to discuss. What are not discussed are overruled. We find no error in the record.

The judgment must be affirmed.

The other Justices concurred.