TOTTEN *v.* TOTTEN.

1. EVIDENCE — ASSAULT — HUSBAND AND WIFE — SELF-SERVING DECLARATIONS.
    In an action for assault and battery, including forcible ravishment, it was competent to show by plaintiff that, on the day following, she complained to her husband of defendant's wrongful act.

2. SAME.
    Error did not occur on the trial in refusing to strike out testimony that defendant had asked a witness to "go on his bond" after plaintiff's husband had approached him threateningly the day following the assault.

3. SAME—TRIAL—CROSS-EXAMINATION.
    Nor was it error to permit plaintiff's attorney, on cross-examination, to ask a witness, who gave testimony in support of defendant's claim of an alibi, whether he had been charged with and tried for statutory assault upon a girl of less than 15 years of age.

4. RAPE—TRIAL—CHARGE—FORCE USED—CIVIL LIABILITY.
    Where plaintiff in one count charged assault and battery and in a second charged forcible ravishment, and her evidence supported a recovery under the second count, defendant, who denied that he had assaulted or ravished plaintiff and who claimed an alibi, was not entitled to a requested instruction that because plaintiff's evidence showed she was taken unawares and frightened so she could not resist, the jury might find that plaintiff consented to the unlawful relations.

5. ASSAULT AND BATTERY—RAPE—RESISTANCE.

A married woman is entitled to recover for assault and battery accompanied by rape, if the act was perpetrated against her will, whether or not she resisted to the limit.

6. SAME.

In such civil action the charge of carnal knowledge does not change the nature of the action for assault and battery, it is only matter of aggravation, affecting the measure of damages.

7. SAME—TRIAL—EVIDENCE.

Instructions given upon plaintiff's request that if defendant's witnesses testified falsely in support of his alleged alibi, the fact might be considered as bearing upon defendant's guilt, was not error, nor was defendant prejudiced by failure of the court to charge similarly as to plaintiff's witnesses, in the absence of any request for such a charge.

8. SAME—CHARGE—PUNITIVE DAMÀGES.

The court should have given a requested instruction that plaintiff was only entitled to compensation, and anything beyond that was unauthorized, that the jury could not award an additional sum as punishment for the alleged wrong; the error was not obviated by instructing the jury that the purpose of awarding damages was to compensate plaintiff for her injuries, and not to punish defendant, the language of the charge being advisory rather than mandatory, and in view of plaintiff's statement that her purpose in commencing suit was to punish defendant, not to get money, the charge was insufficient.

9. DAMAGES—REPUTATION—GOOD NAME—EVIDENCE.

Without special averments of the declaration or testimony tending to show that plaintiff was injured in her good name and reputation, it was error to permit the jury to award damages for that element of the alleged assault.

10. SAME—EXCEPTIONS—SAVING QUESTIONS FOR REVIEW.

Upon errors committed by the court in charging the jury, a party may assign error without bringing the matter to the attention of the trial judge. 3 Comp. Laws, § 10247, 5 How. Stat. (2d Ed.) § 12960.

Error to Kent; McDonald, J. Submitted June 21, 1912. (Docket No. 64.) Decided November 8, 1912.

Trespass by Myrtle Totten, an infant, by Ryol J. Totten,

her next friend, against Bion H. Totten, for assault, battery, and rape. Judgment for plaintiff. Defendant brings error. Reversed.

*Rodgers & Rodgers* and *M. L. Dunham,* for appellant.

*Albert B. Cogger* and *Ellis & Ellis,* for appellee.

STEERE, J. Plaintiff instituted these proceedings against defendant in an action of trespass to recover damages for an assault and battery committed upon her person, including a ravishment. The assault is alleged to have taken place at plaintiff's home in the township of Solon, Kent county, Mich., on Friday, the 26th of August, 1910. The case was tried in Kent county circuit court before a jury, and plaintiff recovered a verdict and judgment in the sum of $3,000.

Defendant has removed the case to this court on writ of error, alleging 16 assignments—12 to the charge of the court, 3 with reference to the admissibility of testimony, and 1 to the court's refusal to grant defendant's motion for a new trial. At the time of the alleged assault, plaintiff was a married woman 20 years of age. She had been married 4 years, and was the mother of one child, 2½ years old. Her husband, Ryol J. Totten, is a nephew of the defendant, and at the time in question was his tenant. Plaintiff and her husband were occupying and cultivating a farm of defendant, consisting of about 90 acres, located a little over a mile eastward from the village of Cedar Springs, in which village defendant resided with his family. By the arrangement under which plaintiff and her husband occupied the farm, defendant had reserved to himself a small room on the first floor of the farmhouse, called the "clothes press," to which there was access by a door from without, an inner door connecting with an adjoining bedroom usually occupied by plaintiff and her husband. Defendant was a man 54 years of age, having a wife and two grown daughters. Both he and his wife,

singly and together, were accustomed to visit the farm from time to time as any matter of business or inclination suggested. They apparently were on familiar and friendly terms with plaintiff and her husband up to the time of the alleged assault.

On August 26, 1910, plaintiff's husband was absent from home, having gone to Lansing on an early morning excursion train, returning after midnight of the same day. Plaintiff remained at home alone with her little boy. It is her claim that about 3 o'clock in the afternoon, while she was in her bedroom combing her hair and her child was playing out in the yard, defendant came into the room through the door from the "clothes press," to which he had access from the outside, and addressed her, first asking where her husband and the hired man were; that his presence did not alarm nor particularly surprise her at first, as he was frequently around the farm, and had control of the adjoining room; that after some commonplace conversation about farm matters, during which he handed her an apple, he proceeded to approach her in an insulting manner, followed by an unexpected assault in which he overpowered her, threw her on the bed, and, with force and violence and against her will, perpetrated the outrage complained of. The defense was a total denial, not only of the assault, but of defendant's having met plaintiff or been at the farmhouse that day. Much testimony was introduced on each side touching his claim of alibi.

Error is assigned on the ruling of the court in allowing plaintiff to testify against objection that she told her husband of the assault the following day. On direct examination she was asked by her counsel:

"*Q.* Did you ever tell your husband this?
"*A.* I did.
"*Q.* When?
"*Mr. Rodgers:* I object to that as immaterial and incompetent."

The objection was overruled and the witness answered:

"Saturday. That noon to the dinner table."

A motion was made to strike this testimony out, which was denied. The Saturday referred to was the day following the alleged assault, witness having previously testified to going to her parents' home on the evening of that day, taking her baby with her.

It is claimed that the rule allowing proof of complaints made to others by the female assaulted, which is an exception to the general hearsay rule, is applicable only to criminal prosecutions, and should not prevail in civil actions, nor be extended to permit a plaintiff in a civil action to bolster up her claim for damages by proof of self-serving statements made by herself after the alleged assault. While the question does not appear to have been squarely before this court in a civil action, it has more than once been held in carefully considered criminal cases that such testimony is competent. *Brown* v. *People*, 36 Mich. 203; *People* v. *Brown*, 53 Mich. 531 (19 N. W. 172); *People* v. *Gage*, 62 Mich. 271 (28 N. W. 835, 4 Am. St. Rep. 854); *People* v. *Marrs*, 125 Mich. 376 (84 N. W. 284); *People* v. *Bernor*, 115 Mich. 692 (74 N. W. 184). In civil actions, failure of the female to complain, or the continued existence of friendly relations between the parties, is admissible as tending to show the falsity of the charge, and, on the other hand, we think it likewise fairly admissible, as tending to show the genuineness of the charge, to allow proof not only of recent subsequent conduct and appearance, but complaints. The plaintiff in this case gave no details of the conversation or what was said beyond the fact that she told him. This rule is well reasoned in *Gardner* v. *Kellogg*, 23 Minn. 463, wherein the court said:

"Whatever may be the reason for the rule as applied to criminal cases—whether it is that statements of this character as to the cause and immediate consequences of the injury, made by the injured party so soon after the injury, and while still under the influence of the smart and suffering occasioned by it, constitute a part of the *res gestæ*, as was held in *Thompson* v. *Trevannion*, Skinner, 402, approved in *Aveson* v. *Lord Kinnaird*, 6 East, 188,

and in *Insurance Co.* v. *Mosley*, 8 Wall. (U. S.) 397; or whether it is that silence under such circumstances is so contrary to human experience, and to the natural and ordinary conduct of a woman suffering under such a wrong, as to raise, if not explained, an unfavorable presumption affecting the credibility of her testimony as a witness, and hence, as is suggested by Woodruff, J., in *Baccio* v. *People*, 41 N. Y. 265, 268, affirmative proof is admissible to repel the inference—it would seem quite clear that the rule has for its support a foundation equally as firm and reasonable in civil as in criminal actions.   If it is a sound and safe rule to observe in the determination of a controverted fact which is to affect the liberty and dearest personal rights of the citizen, it is difficult to perceive why it ought not to be followed in the ascertainment of the same fact when his pecuniary interests alone are involved."

Error is assigned on refusal of the court to strike out the testimony of a witness named Durfey as to defendant's asking him if he would go on his bond.   Plaintiff's husband had testified that after dinner on the day following the alleged assault, shortly after learning it, he had sought out defendant in a poolroom in Cedar Springs, and told him to be at the farmhouse that night at a certain time, and, when asked by defendant why, said, "It makes no difference.   You be there, or I'll send for you." Durfey testified that the same afternoon defendant approached him, and wanted to know if he would go on defendant's bonds if he wanted him to; that in reply to the inquiry of what he wanted it for, defendant said he would see him later.   It was claimed by the plaintiff that it was fairly inferable from the sequence of facts that inquiry as to bonds was the result of his talk with plaintiff's husband, and tended to indicate guilty knowledge.   We are not prepared to say that such evidence had no probative force, and do not find its admission reversible error.

A witness named Peter Keech, called by defendant in support of his claim of alibi, was asked in the course of a sharp cross-examination:

"*Q.* Mr. Keech, are you the same Peter Keech that

within about a year was on trial in the circuit court here for raping a girl under 15 years of age, in which the jury disagreed ?"

This was objected to as incompetent and immaterial, and the objection overruled. Witness answered that he was, but was not convicted. This ruling is assigned as error. The question was within the discretion of the trial court permissible on cross-examination. In the case of *Driscoll* v. *People*, 47 Mich. 413 (11 N. W. 221), it was said:

"A witness may be asked on cross-examination within the proper discretion of the court, not only concerning his conviction, but also concerning any serious charge brought against him. *Wilbur* v. *Flood*, 16 Mich. 40 [93 Am. Dec. 203]; *Clemens* v. *Conrad*, 19 Mich. 170; *Hamilton* v. *People*, 29 Mich. 173."

Three of defendant's assignments of error, involving refusal of the court to give seven of his requests to charge, raise questions relating to the elements of assault and battery with carnal knowledge, to what extent the assault must have been resisted, and whether it must have been entirely against plaintiff's will and accomplished by force, in order to permit the recovery of substantial damages. It is alleged on these propositions the court charged inconsistently and "both ways."

Plaintiff's declaration contains two counts—one for assault and battery only, without ravishment, and the other for assault and battery accompanied by and including violent debauchery and carnal knowledge by force and against the will of plaintiff. Her testimony was directed to, and recovery sought under, the latter count. The issue was well defined along these lines. She testified positively to the assault, violence, overpowering, carnal knowledge, that she did not encourage or consent, and that it was against her will. Defendant himself testified that she did not consent, that he had no intercourse with her of any kind on that day, did not see her and was not at the farmhouse, where she claimed the assault took

place, at all during the day in question, and all testimony introduced in his behalf was to that effect. It apparently was the claim of defendant that, even should the jury find that he had improper relations with plaintiff on that occasion, it might be inferred that it was with her consent, or that her testimony failed to establish by a preponderance of evidence it was against her consent, and that she resisted to the utmost and continued her resistance until the act was consummated. This is based on plaintiff's failure to make outcry and active physical resistance. Her testimony relative to that feature of the case is, in part, as follows:

"When he took hold of me, I was frightened. I was shocked. I never thought of such a thing. I was shocked by his stepping up to me and doing what he did. He made that remark, 'I love you,' and I could not help myself. He had hold of me when he made the remark. My hair was down over my face. I have quite a little hair. His making this remark and grabbing me frightened me. I was just shocked and I could not help myself hardly at all. I was so surprised and everything else. It made me helpless almost, for I never expected such a thing. I did not strike him, for he had hold of my hands. When I said on cross-examination that I was conscious all the time, I meant that I was conscious to an extent that I hadn't fainted. I knew what was going on and knew what he did, but was so surprised and frightened and everything else that I couldn't help myself. If I could, I defended myself as far as I could. I could not do very much simply because he put his face over my mouth and had hold of my hands. I was so frightened that I could not. I was weak and faint. When I get frightened, it makes me faint. I hardly ever scream when I am frightened because it makes me faint. I almost faint away. I was in that condition when this was going on."

Defendant proffered numerous requests, in varying language, involving the principles above mentioned, typical of which are:

"(3) There is no claim in this case that the plaintiff used any physical force or attempted to use any physical force in resisting the assault of the defendant, or that the plain-

tiff made any outcry or attempted in any manner to prevent the assault, debauch, and carnal knowledge of her person. The plaintiff claims that the reason she did not physically resist the said defendant or make an outcry or attempt in some way to defend her person was because she was so scared that she lost control of herself. Now, unless the plaintiff has satisfied you by a preponderance of the evidence that she was physically unable to resist the defendant, and that she was physically unable to make any outcry or in any manner endeavor to protect herself and that while she was in this condition the sexual intercourse occurred, then she cannot recover in this action for an assault and carnal knowledge of her person by force and against her will.

" (4) It is the law that the gist of this action is force and violence, and that to sustain plaintiff's claim she must show, in addition to carnal intercourse, that defendant accomplished the act by force and violence and against her will. It must also appear that she resisted defendant to the extent of her capability, and that said resistance extended to the time said act was accomplished."

The court in his charge clearly and correctly defined assault and battery and rape, then stated that in this civil case—

" The mere fact that she did not resist to the utmost would not excuse the defendant from his unlawful acts, if you find he had intercourse with her without her consent. * * * She could not recover damages for any act to which she consented."

So far as we can gather from the record, it was plaintiff's position that defendant was guilty under the second count, which included ravishment, or not guilty at all, and the evidence on both sides so indicates, but the court charged:

" If you find that the defendant did not have intercourse with her against her will, but did commit an assault and battery upon the plaintiff, she would be entitled to recover such damages as she has shown she has suffered from such assault and battery alone "—

thus allowing the jury to credit her story in part and disbelieve it in part. Whatever else may be said of this por-

tion of the charge, it becomes unimportant, inasmuch as the jury found defendant guilty under the second count of assault and battery accompanied by debauchery.' His instruction upon that branch of the case, that, in order to recover, it is not necessary to prove the limit of resistance provided the act was perpetrated against her will, is in harmony with *Shenk* v. *Dunkelow*, 70 Mich. 89 (37 N. W. 886), in which the requests of defendant embody the same propositions as many of those presented here. The court there said, speaking of the action as an entirety:

"The plaintiff claimed it was not necessary for the plaintiff to show that the assault was committed with such force and violence as to constitute the crime of rape, nor was it necessary to establish any fact in the plaintiff's case by more than a preponderance of the evidence to entitle her to recover.      *   *   *

" Her statements, if believed by the jury, taken with the other evidence in the case, although they were denied by the defendant, contain all the elements necessary upon which to base the verdict the jury rendered."

See, also, *Elliott* v. *Van Buren*, 33 Mich. 49 (20 Am. Rep. 668).

In a civil action for assault and battery, a charge of ravishment does not change the nature of the action, but is only matter of aggravation, bearing on the measure of damages. The language used in *List* v. *Miner*, 74 Conn. 50 (49 Atl. 856), is applicable. In that case an aggravated assault and battery was charged, as in this case. The trial court said:

"As has been said to you, any unlawful touching of another constitutes, in fact, assault."

This was claimed to be misleading, and it was urged that the jury must have been misled by a total lack of a charge upon the element of consent; that the charge as to assault and battery—

" Must have been understood by the jury to mean that if the defendant had carnal knowledge of the plaintiff with her full consent, or even by her solicitation, that he

had committed upon her an assault for which she could recover."

The appellate court disposed of the technical niceties raised upon the charge and refusal to charge on those distinctions as follows:

"If any claim had been made during the trial, by either party, that whatever the defendant did to the plaintiff he did by her consent and allowance, or if there had been any evidence upon which such a claim might have been based, there would be some force in the objection that the defendant here makes to the charge; but there was no such evidence in the case, and no such claim was or could be fairly made. The complaint charged a violent assault upon the plaintiff, made against her will and consent. The evidence for the plaintiff tended to prove just such an assault as was alleged, and not one of a different kind. The answer unqualifiedly denied any assault at all, and the defendant, by his evidence, denied absolutely that he had ever assaulted the plaintiff or had anything whatever to do with her. Before the jury, then, the claims of the parties were these: The plaintiff claimed that all the defendant did to her was done against and not with her consent and allowance; the defendant claimed her story was untrue from beginning to end, and that he had never assaulted her or had carnal knowledge of her at all, with or without her consent. * * * In view of the case as it was before the jury, upon the claims made and evidence adduced by the respective parties, we think the charge, upon the point in question, was sufficient."

Error is assigned upon portions of the charge relating to witnesses in which the court stated that, in a case of this kind it was not essential, in order to convict, that plaintiff should be corroborated by the testimony of other witnesses; that evidence which tended to prove defendant committed the assault also tended in the same degree to prove that he was there at plaintiff's home at the time of the assault. If the jury found from the evidence that any of defendant's witnesses testified falsely as to his acts or movements on that day, it might be considered as bearing upon credibility and guilt. The last instruction was given at the conclusion of an instruction in regard to the defense

of alibi. These instructions were given upon requests presented by plaintiff, are supported by authority, and should be considered in connection with the charge as an entirety. The objection made to them is chiefly that they were partial, in favor of plaintiff, and should have been elaborated and applied by the court equally to both sides. The court might, with propriety, have done so had defendant requested it, but we do not find the charge upon this point as given error, and it is not error for the court to fail to charge more elaborately, not being requested to do so, especially where the subject has been brought to the attention of the defendant by requests preferred by the opposite side before the charge is given. *Barnett* v. *Insurance Co.*, 115 Mich. 247 (73 N. W. 372).

Plaintiff, while giving her evidence, declared that she did not bring this suit to get money out of defendant, but said "we brought it to punish him for what he did." Upon that subject defendant's counsel requested the court to charge as follows:

"If you find the defendant guilty in this case, you have the right to give the plaintiff such an amount of damages as will compensate her for the injury done as shown by the evidence in this case. Compensation to the plaintiff is the purpose in view, and, when that is accomplished, anything beyond, by whatever name called, is unauthorized. It is not the province of the jury, after damages have been found for the plaintiff so that she is fully compensated for the injury, to mulct the defendant in an additional sum to be handed over to the plaintiff as punishment for the alleged wrong."

This was refused. The court, however, in lieu thereof said:

"The purpose of awarding damages, if you find that plaintiff has sustained any, is to fully and fairly compensate her for the injury she has received, and not to punish the defendant."

This language is advisory rather than mandatory. It is not the equivalent of the request which was refused, and which is a correct statement of the law especially ap-

plicable to this case, in view of the emphasis put upon the subject by plaintiff's testimony that punishment was her purpose.    It should have been given as requested.

In instructing the jury as to the measure of damages the court said:

"These damages include not merely physical injury and suffering, but damages to her good name, mental suffering, humiliation, and mortification."

There was no evidence in the case of damage to her good name, but the court stated to them that it was an element of damages.    Injury to reputation or good name were neither alleged nor proven.    There was not a scintilla of proof as to loss of social standing, that she had been shunned, slighted, or slurred by her friends and neighbors, or that any one regarded her with less respect. This transaction, as she related it, was absolutely unknown to her friends and neighbors, or the public, until she and her husband advertised it, that the circumstances of the assault did not make it public, and that she was not compelled to disclose it by reason of her physical condition is shown by her own testimony.    Neighbors lived across the road, not far away, and a hired man named Baldwin was on the premises.    She remained around her home until towards 6 o'clock that evening, and then went after the cows as usual.    The hired man testified that she helped him do the chores, milking four cows.    In the evening she went to the neighbor's across the way, who noticed nothing unusual, and remained there visiting until her husband returned, when she went home with him. The only evidence of anything which was noticeable at that time given by any witness is the testimony of her husband that she appeared down-hearted, and he heard her sobbing two or three times during the night.    There is no proof of loss of good name or circumstances beyond her control making the matter public or a known disgrace. This court has more than once held that damages in case of tort must be proven before they can be recovered.

*Cousins* v. *Railway Co.*, 96 Mich. 386 (56 N. W. 14); *Spray* v. *Ayotte*, 161 Mich. 593 (126 N. W. 630); *Pratt* v. *Hamilton*, 161 Mich. 258 (126 N. W. 196).

In the case of *Kepler* v. *Hyer*, 48 Ind. 499, involving a criminal assault upon a female, the court held, apparently irrespective of allegations and proofs, that injury to reputation or character in such a case cannot be made the basis on which to estimate damages. In the case of *Fay* v. *Swan*, 44 Mich. 544 (7 N. W. 215), which involved an assault with intent to ravish, this court held that the jury in estimating damages could take into account the disgrace as well as physical suffering caused by the assault. An examination of the record in that case discloses that the word " disgrace " was apparently not used as synonymous with good name or reputation, but rather as meaning a sense of shame, humiliation, or feeling of disgrace affecting plaintiff's mental suffering. While the question of necessary publicity was not discussed in that case, it appeared that plaintiff was forced to obtain the services of a physician and unavoidably make known to him the transaction. That case is not in conflict with the well-reasoned rule stated in *Sletten* v. *Madison*, 122 Wis. 251 (99 N. W. 1020). The court there said:

"The most obvious of the errors assigned is presented by an instruction to the jury to include as an element of damage to be compensated, 'loss of reputation.' Respondent's counsel offers neither argument nor citation in support of the proposition that loss of reputation is an element of the general damages resulting from an assault, even when accompanied by sexual solicitation; indeed, seems to concede the contrary, but urges that the instruction could not injure the defendant because there was no evidence of any loss of reputation. The conclusion is *non sequitur*. Instruction to the jury to make allowance for such an element was a direct invitation to them to draw on conjecture or imagination as to its existence in absence of any evidence, and for that reason alone would be erroneous, even if the element mentioned would be proper as special damages when supported by the proofs. [Citing cases.] * * * Hence the conclusion is irresist-

ible that without direct allegation of such injury as special damage, supported by proof, there can ordinarily be no recovery for this element of damage in an action for assault. We are not prepared to say that there may not be cases where the assault, especially when associated with attempts upon the chastity of a woman of pure character and good reputation under circumstances of publicity, may not affect her fair name and her standing in the community to her actual, nay, pecuniary damage. The proneness of the human mind to suspicion is such that the mere fact of sexual attempt upon a woman may arouse suspicion of conduct or character on her part to have invited it with hope of success, and the fact that she is known to have been so solicited may derogate from the pre-existing belief in her virtue and decorum. We shall not decide in the present case whether that may, under special circumstances of both allegation and proof, ever be an element of special damage in an action for assault. That is not the situation here, for there is neither allegation nor proof of any such facts. The recovery permissible in this case was only for those general damages which so customarily accompany an assault that the law presumes them at least in some degree. As we have said, these do not include injury to reputation. Hence we conclude the instruction complained of was error."

The court, in his reasons for refusing a new trial, and counsel for plaintiff in their brief, admit, in effect, that there is no positive evidence of injury to good name and that the instruction upon that subject was erroneous, but state that it was an inadvertent and harmless error, in view of the rest of the charge and the fact that able counsel at defendant's table, listening to the charge, apparently did not notice it, and did not call the court's attention to the matter. It was clearly stated as an element of damages, and the first element mentioned in addition to physical suffering. The statement is nowhere contradicted or corrected in the charge and stands as a part of it. In view of the verdict, we cannot say that the jury did not take their cue from this instruction, and that it did not enter into and constitute a portion of their award. It is rather to be presumed that it did.

If manifestly an inadvertence, as indicated to those listening to the charge, it would seem to be the duty of plaintiff's counsel, rather than defendant's, to call the attention of the court to it. Under the practice which formerly prevailed, it would have been the duty of counsel for defendant to then take exceptions, thereby calling the attention of the court to the matter and thus give opportunity to make correction; but latterly, for reasons which we do not seek to fathom, the legislature provided that it is not necessary in such cases to except to the charge given to the jury, but the party deeming himself aggrieved by any portion of the charge may remain silent, and subsequently, when removing the case to this court for review, assign his errors upon the charge. 3 Comp. Laws, § 10247 (5 How. Stat. [2d Ed.] § 12960. The question of damages in this case was a most important one, upon which the jury should have been plainly, fully, and correctly instructed.

For the reasons stated, the judgment is reversed, and a new trial granted.

MOORE, C. J., and McALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.