CLEVELAND CO-OPERATIVE STOVE CO. v. MALLERY.[1]

SALE—GOODS ORDERED IN NAME OF THIRD PARTY—LIABILITY—
EVIDENCE.

> The testimony of one to whom defendant had sold his bus-
> iness that he spoke to defendant about ordering goods in his
> name, and was told that it would be all right, together with
> evidence that invoices of shipments made in his name were
> mailed to the defendant, and received by him without objec-
> tion, is sufficient to sustain a verdict against him for the
> price of the goods.

Error to Wayne; Carpenter, J. Submitted November
19, 1896. Decided December 1, 1896.

*Assumpsit* by the Cleveland Co-operative Stove Com-
pany against Ambrose S. Mallery for goods sold and de-
livered. From a judgment for plaintiff, defendant brings
error. Affirmed.

The defendant, a merchant in the city of Detroit, had
for some years prior to September, 1892, purchased stoves
of the plaintiff, and received credit therefor, in the usual
course of trade. During that month, the precise date not
being fixed, the defendant sold out his stock and business
to one Lamb, who had been for some time a clerk in his
employ. Lamb was without means, and, to secure defend-
ant for the purchase price, gave him a chattel mortgage
upon the stock of goods and his household furniture.
Lamb ordered goods of the plaintiff in the name of the
defendant. Plaintiff brought suit to recover a balance of
$78.13. The sole question submitted to the jury was, did
defendant authorize Lamb to purchase goods in his name?
The jury found for the plaintiff. Defendant contends

---

[1] Rehearing denied January 16, 1897.

that the court should have directed a verdict for him, and insists that there was no evidence of such authority.

The testimony on the part of the plaintiff tended to show that its traveling agent, in September, visited defendant, in his usual place of business, to solicit a further order; that defendant then informed him that he had sold out to Lamb; that he said to defendant, "Lamb has no money, and cannot buy;" that, after talking with Lamb at defendant's request, he told defendant that he could not trust Lamb; that witness said to defendant: "You have this thing all in your own hands. Why don't you help him along, and buy some goods for him?" Defendant then signed an order for goods amounting to $100.65, which were shipped to him (defendant). Mr. Lamb testified that he had a conversation with defendant about ordering goods of plaintiff in defendant's name, and that defendant said, "Go ahead; it will be all right," and that defendant told him he could have the use of his name; and that, acting upon this, he ordered the goods. It also appears that the goods were shipped to Mr. Mallery, and that invoices of shipment, together with the bill of lading, were mailed to him at the time of shipment. Mr. Lamb also testified that letters which came to the store directed to defendant were not opened by him, but were handed to defendant, who was in the store nearly every day. Defendant testified that he gave no such authority to Lamb; that the bill of goods above mentioned was ordered before the sale to Lamb was completed, and that the first knowledge he obtained that Lamb was ordering goods in his name was when he saw some stoves standing upon the sidewalk in front of the store, marked to him; and that on December 30, 1892, he wrote plaintiff that Lamb was not authorized to order goods in his name. After the receipt of this letter, no more goods were shipped.

*Franklin L. Lord*, for appellant.

*Frank T. Lodge*, for appellee.

GRANT, J. (*after stating the facts*).   We are of the opinion that the case was properly submitted to the jury. The goods were shipped and invoices sent by mail to defendant, as was done in *Heyn* v. *O'Hagen*, 60 Mich. 150. There is evidence from which the jury might find that defendant received the invoices and made no objection. This, unexplained, would be evidence of original authority, and, in connection with the testimony of Lamb, was important.   Defendant does not testify what time elapsed between the date he saw the goods marked to him and the letter of December 30th denying the authority.   We also think that the evidence of Lamb, if believed by the jury, is sufficient to sustain the verdict.   If there were discrepancies in his testimony, it was the province of the jury to weigh them, and determine what the fact was, and how much credence they would give to his statement.

The judgment is affirmed.

The other Justices concurred.