GRABOWSKY *v.* BAUMGART. [1]

1. SALE—CONSIDERATION—EVIDENCE—VALUE OF GOODS.
On an issue whether the purchaser of a stock of goods, in addi-
tion to the admitted money consideration therefor, agreed to
discharge a debt of some $7,000 owing to him by the seller,
evidence of the value of the goods is admissible.

2. SAME—WITNESSES—COMPETENCY.
A witness who has merely "glanced over" a stock of clothing,
going about among the tables on which it was placed, but
examining none of the goods, is not competent to express an
opinion as to the value of the stock.

3. TRIAL—PLEADINGS—ARGUMENT OF COUNSEL.
In an action for goods sold, defendant, under the general issue,
gave notice that a settlement between the parties had can-
celed any balance due on the stock in question, if there was
any, but denied that there was any such balance.  On the
trial he admitted the balance, but claimed that it was canceled
by the settlement, and testified that he never saw the notice
with the plea, and knew nothing of it.  *Held*, that it was
error to permit plaintiff's counsel to make the denial the basis
of a vituperative argument to the jury.

4. SETTLEMENT—BURDEN OF PROOF.
Where defendant admitted the original indebtedness sued on,
but claimed that it had been settled in a subsequent trans-
action between the parties, he had the burden of proving such
settlement, though, as part of the transaction, plaintiff gave
him promissory notes for a considerable sum.

Error to Wayne; Frazer, J.   Submitted June 6, 1901.
Decided September 25, 1901.

*Assumpsit* by Anna Grabowsky against Joseph Baum-
gart to recover the purchase price of a stock of goods.
From a judgment for plaintiff, defendant brings error.
Reversed.

---

[1] Rehearing denied November 4, 1901.

*Stevenson, Merriam, Eldredge & Butzel,* for appellant.

*Maybury & Lucking,* for appellee.

LONG, J. This action was brought to recover for the purchase price of a stock of clothing sold by plaintiff to defendant in January, 1896, for $4,000. The defendant, under the plea of the general issue, gave notice that in December, 1898, all matters of difference between the parties were settled in connection with the sale of another stock of goods from defendant to the plaintiff, by which it was then and there agreed, by and between the parties, that the sale by said defendant to plaintiff of said stock of goods, and the acceptance by defendant of a certain sum of money, should constitute a settlement of all claims of either party against the other, including the balance due said plaintiff from said defendant for the purchase price of the stock of goods sold in 1896, if any such balance existed, "which this defendant denied and now denies."

It appears that at first defendant was in plaintiff's employ as a clerk; then as a partner. He borrowed money of plaintiff, and gave due-bills, from time to time, until, in 1895, this indebtedness amounted to $3,326.44. In 1896 plaintiff sold to him a stock of goods on Gratiot avenue, Detroit, for $4,000, so that his indebtedness to her amounted to something over $7,000. Defendant had taken some goods from a partnership in Lansing, and put into the Detroit store on Gratiot avenue, and continued to do business there. In April, 1898, defendant married a granddaughter of plaintiff, and after this plaintiff seems to have aided defendant in selling goods, and, the lease of the store having expired, she took a lease of it in her own name. Trouble thereafter arose. The parties called upon one Jacobs, a mutual friend, hoping he might bring about a settlement of their affairs, and he undertook to do so. An inventory was taken of the stock in the store. It is claimed by defendant that this inventory footed up to $12,325.44, not including the store fixtures or

the good will of the business. The inventory was completed on Saturday, and defendant claims that it was arranged that plaintiff, with Mr. Jacobs, should meet the defendant and a Mr. Blumenthal on the next day (Sunday), and effect a settlement.

It is the contention of defendant that the parties did so meet and settle all differences, as follows: The plaintiff to buy from defendant the stock of goods then in the store, and pay therefor in cash or good notes $3,500, pay the indebtedness on the stock, amounting to $2,300, and also cancel the claim she (plaintiff) had against defendant of $7,300; this amount of indebtedness being for the stock purchased by him from her in 1896, $4,000, and money borrowed from time to time, amounting to about $3,300. The plaintiff contended and testified on the trial that she on that day purchased defendant's stock of goods, and was to pay therefor in cash or notes $3,500, and the indebtedness on the stock of $2,300, but that nothing was said about the indebtedness due her from defendant of $7,300. It appears that, whatever the arrangement may have been about the $7,300 claim, the parties met on Monday morning, a bill of sale was given by defendant to plaintiff for the goods in the store, and defendant received Mr. Jacobs' notes for the $3,500; that immediately after this was done, and on the same day, this suit was commenced, and Jacobs was garnished on the notes. The cause came on for trial, and the court left the issue thus made between the parties for the consideration of the jury, who returned a verdict in favor of plaintiff for $4,228.49.

It is the contention of counsel for defendant that the court erred in admitting testimony on behalf of plaintiff bearing upon the question of the actual value of the goods conveyed by defendant. The question was asked plaintiff by her counsel:

"*Q.* How did the stock compare in size and kind when you sold him?

"*A.* It was not in a good condition. It was moth-eaten, and it was odds and ends,—some coats that were nothing

but moth-eaten. * * * It was not in a good condition at all. * * *

"*Q*. In paying or agreeing to pay him $3,500 and the debts, $2,300, state whether, in your judgment, that was a full price for the stock which you bought of him. Was that all the stock was worth?

"*A*. Yes, sir."

One Charles Goldsmith was called as a witness for plaintiff, and testified:

"I looked at this stock of goods. I think I was there after the sale. I always manufactured goods, and know what they are worth. I did not go there for the purpose of examining the stock. I am able to judge of the stock by examining it. I examined this stock. I don't mean I took an inventory. I glanced it over. I was not asked about it at the time. From a glance at the time, I know what the stock was worth. It was a very poor stock,— an old stock."

The court asked:

"*Q*. What examination did you make of the stock?

"*A*. Not any. After she told me what the inventory was, I looked through the stock. I went through table by table, and glanced over it,—just glanced through them on the tables. I looked through the piles from the outside,— lifted one up. I did not count them, and do not know how many pieces there were.

"*Q*. Do you know within a thousand how many pieces there were?

"*A*. No, sir."

The court allowed the witness to state that the stock was worth not to exceed $5,000. All the above testimony was taken under objection.

We think the testimony as to the value of the stock, except Goldsmith's, which will be referred to later, was properly admitted. It was a circumstance which the jury might consider in determining which of the parties was entitled to belief as to the agreement for the purchase of the stock. Such testimony is admissible. *Banghart v. Hyde*, 94 Mich. 49 (53 N. W. 915). See, also, *Richardson v. McGoldrick*, 43 Mich. 476 (5 N. W. 672);

*Misner* v. *Darling,* 44 Mich. 438 (7 N. W. 77); *Shake-speare* v. *Baughman,* 113 Mich. 551 (71 N. W. 874).

The testimony was very conflicting upon the question of the agreement. The contract of settlement was shown to have been made in the presence of different witnesses. Mr. Blumenthal was called in by the defendant, and Mr. Jacobs by the plaintiff. Mr. Immerman and Mr. Frankenstein, it is claimed, were also there. Mr. Blumenthal testified that he was present when the contract was made; that—

"After Mrs. Grabowsky and Mr. Jacobs had a conference in another room, she backed out of that proposition [the proposition which had been made by defendant], and would not take $5,000 for her claim; and defendant, Baumgart, said it was getting late, and he wanted to know one way or the other; that he would take $3,500 for his claim in the business in place of $4,000. Then Mr. Jacobs took a pencil and paper, and marked it down, and said: 'Now, Mrs. Grabowsky, remember, if you don't want to take $5,000 for your claim, that you have to pay Mr. Baumgart $3,500, and $7,300 in your claim, and $2,300 on the indebtedness against the stock, which will figure up $13,100, and the stock would cost you about 100 cents on the dollar. Are you satisfied to take the stock at 100 cents on the dollar?' And she says: 'All right; I will take it.' The items which made up the $13,100 were the $7,300 which she claimed Baumgart owed her, $2,300 indebtedness against the stock, and $3,500 which Joe [Baumgart] was to take for his share."

Mr. Immerman testified substantially that the agreement was that the plaintiff was to take the stock and pay to defendant $3,500, to creditors $2,300, and cancel her claim of $7,300 against defendant. On the other hand, Mr. Jacobs testified that plaintiff was to pay defendant $3,500 for the stock, and creditors $2,300. When asked about the indebtedness of $7,300, he stated that defendant said he would pay that a little at a time, as he was able. Mr. Selling, a witness also produced by plaintiff, testified that on Monday morning plaintiff called him to the store; that he there had a talk with defendant, in

which he stated that he was selling his stock to plaintiff for $3,500, and she was to pay the debts; that he did not owe the plaintiff anything, and that had nothing to do with the matter.

We think, however, that the court was in error in permitting witness Goldsmith to give his opinion as to the value of the stock. His examination of it, according to his own testimony, was very superficial, and he apparently was not sufficiently familiar with it to judge of its value. His testimony should have been stricken out. We are unable to say that it was not prejudicial to the rights of the defendant.

We think, also, that the court was in error in permitting plaintiff's counsel to make the argument he did at the close of the testimony. Counsel said:

"What are his written pleadings? 'He comes into this court after stating the facts to his counsel. He puts it down in writing, and he comes in here and says, 'I was undertaking to defraud her.' Why do I say that? Because he admits under oath that he owed her every penny at that time. Now, he says in writing, at the beginning of this suit, 'I denied that I owed her a cent, and I deny it now.' That is what he said at the beginning of the suit. Now he comes into court and says: 'I don't care about the value of this property. She agreed to take it under those circumstances, whatever they were. She is bound by it. She agreed to take it for $14,000,—mainly old goods that nobody would give $6,000 for. She made the bargain. Let the chattel mortgage be enforced. Take the goods. She agreed to it. I don't offer a word of evidence of what the stock was worth. Here is an inventory. She agreed to it. That is the evidence in the case.' Agreed to it, when he is a self-confessed robber of the grandmother of his wife! He admits in writing that he denied owing her a cent when he owed her $8,600. I am repeating that often, because it is the turning point in this case. You may stamp her as a robber if you choose by your verdict; but I say his written admissions are, together with his oath as given now, that he is a self-confessed attempted robber. Denying that he owed her money, and then attempting to force her into a bargain by which he would get away with $3,500, and all she had,

practically,—to start over again in life after all these years of labor. And they come into court, and whitewash him, and call him 'Honorable Joe;' and all that depends upon whether you find he denied this debt. If he didn't deny this debt, you find for him. If he did deny this debt, he is a villain; he is a scoundrel; he is. an attempted robber. If you find that he did deny it, if you find that what his counsel said in writing at the beginning of this case is true, then you must find against him."

The court should not have permitted this argument. The issues of the case did not warrant it. It is true that Mr. Selling testified that defendant told him he did not owe the plaintiff anything, but that was at a time when the defendant claimed the settlement had been made. Mr. Jacobs testified that defendant admitted the indebtedness, and all the other witnesses to the transaction also so testified. The defendant did not deny on the trial that he owed the $7,300, but claimed it was settled for in the purchase of the goods by plaintiff. The notice under the plea did deny the indebtedness, but defendant did not draw the notice, and he testified that he never saw it, and knew nothing of what was set up in it. Under these circumstances, the argument indulged in by counsel was unwarranted, and must have been very prejudicial to defendant's case. On the trial the defendant did not deny that he owed plaintiff before the settlement $7,300, but claimed this was taken into account in the settlement. Plaintiff denied that this indebtedness of $7,300 to her was taken into account in the settlement. This was the issue, and the court should have compelled counsel to keep within it.

We think the court was not in error in saying to the jury that the burden of showing the settlement claimed by him was on the defendant.

For the errors pointed out, the judgment must be reversed, and a new trial granted.

The other Justices concurred.