## LONG-BELL LUMBER CO. *v.* NYMAN.

1. SALES—ACCEPTANCE OF GOODS—EFFECT.

> Where, in an action for the price of a car load of lumber, it appears that defendant had knowledge several days before its receipt that the lumber had been ordered in his name, that on its arrival he was notified and ordered it turned over to the person for whom it was ordered, and made no disclaimer as to having ordered it until several months afterward, it is error to direct a verdict for defendant, though it does not appear except by inference that defendant, at the time the order for the lumber was given, had knowledge of it.

2. EVIDENCE—PRESUMPTIONS—LETTERS—TELEGRAMS—RECEIPT BY ADDRESSEE.

> There is a presumption that letters mailed and telegrams sent in due course of business were received in like manner by the person to whom they were addressed; the presumption is rebuttable, however, and whether it is rebutted in a particular case is a question of fact.

3. SALES—ACTION FOR PRICE—INSTRUCTIONS.

> Where, in an action for the price of a car load of lumber, it appears that, on receipt of an order from a third person to ship the car to defendant, plaintiff sent an invoice to defend-

ant stating that plaintiff had sold the lumber to defendant, that several letters and telegrams of the same import were sent to defendant, all of which defendant testified he turned over to the person for whom the lumber was ordered and to whom he ordered the carrier to deliver the lumber on its arrival, instructions as to the duty resting upon a party to speak when another acting in good faith is being misled by his silence, and as to what amounts to ratification of the unauthorized acts of a stranger, are required.

Error to Van Buren; Carr, J. Submitted April 10, 1906. (Docket No. 45.) Decided September 20, 1906.

Assumpsit by the Long-Bell Lumber Company against R. C. Nyman for goods sold and delivered. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Reversed.

*Lincoln H. Titus* and *William J. Barnard*, for appellant.

*Thomas J. Cavanaugh*, for appellee.

McALVAY, J. Plaintiff, a Missouri corporation, doing business at Kansas City, Mo., brought suit against defendant who was a lumber dealer residing at Bangor, Mich., in the circuit court for Van Buren county, to recover the price and value of one car load of yellow pine lumber which it is claimed was shipped by it to defendant and received by him. The facts and circumstances of this shipment are as follows: In November, 1902, plaintiff received from J. B. Graves Co., wholesale lumber dealers of Benton Harbor, Mich., an order to ship by rail to defendant at Bangor this bill of lumber, giving dimensions and number of pieces with prices. Plaintiff proceeded to fill the order and shipped the same by rail December 19, 1902, sending at the same time an invoice of the lumber shipped in Illinois Central car No. 82,883, amounting to $305.55. With this invoice, it is claimed, was a letter notifying defendant of the shipment, calling attention to some particular pieces, asking that the same be carefully

checked over on arrival, and plaintiff be advised as to any discrepancy.   The car was delayed on the road for a long time and during that time plaintiff received three telegrams purporting to be signed by defendant.   The first read:

"Bangor, Mich., Jan. 6, 1903.
"Send me routing Illinois Central car 82,883, also shipping bill.   Are joice shipped ?   Where are they ?
"R. C. Nyman."

The second:

"Bangor, Mich., Jan. 14, 1903.
"Joice not here.   Can you locate and push them.
"R. C. Nyman."

The third:

"Bangor, Mich., 1–30–'03.
"McKellar notifies me will not want joice after February second.   Where are they ?
"R. C. Nyman."

In response to the first telegram plaintiff wired:

"Kansas City, Jan. 7, 1903.
"R. C. Nyman,
"Bangor, Mich.
"Invoice mailed.   Are tracing car.   Will rush all possible."

In answer to the second telegram from defendant plaintiff claims a letter was written on the same date.   In all, plaintiff claims to have written 10 letters in regard to the shipment, and asking payment therefor.   The last one being notice of a draft made for the amount.   All mailed in the ordinary course of business.   None of these letters were produced as requested of defendant, and carbon copies were introduced in evidence.   Defendant was called as a witness for plaintiff and admitted receiving the invoice, and two or three letters.   The waybill was received at Bangor by the railroad company February 26th, and the car arrived March 2, 1903, as appears from the records of the company.   On the day the car arrived the

agent notified defendant who, as the agent testified, told him to deliver it to Mr. McKellar for the schoolhouse, and further testifies defendant "said the car was ordered in his name, and wasn't for him, it was for the schoolhouse." The agent delivered the car to McKellar who receipted for it and paid the freight. Defendant testifies that he told the agent he had nothing to do with it, that it was McKellar's. The draft was sent to the bank with notice to defendant of that fact, April 22, 1903. The draft was not paid. On June 15, 1903, defendant wrote plaintiff:

"Yours of the 12th received. This bill I have nothing to do with; never ordered the lumber, and never had anything to do with any part of it. I have given your correspondence to McKellar. He was the contractor that had the job of building the schoolhouse. Think that a man in Benton Harbor ordered the lumber for him and had it shipped to me."

This is the only letter defendant wrote plaintiff. The record does not show that defendant knew of the order given by J. B. Graves Co. to plaintiff. It appears that McKellar was a contractor building a schoolhouse, and needed certain lumber which could not be obtained there. Defendant testified that members of the lumber association would not ship to contractors; that McKellar was obliged to have it shipped to some dealer, and wanted to ship two or three car loads in defendant's name. Two car loads were shipped from Benton Harbor through Graves in that way, with defendant's permission. He afterwards learned that the car load in suit was shipped in the same way, and he knew that when this lumber came it was to be used in the schoolhouse. Defendant offered no evidence. Both parties requested the court for an instructed verdict. The court granted defendant's request, and instructed a verdict of no cause of action. A judgment was accordingly entered.

Plaintiff on writ of error asks this court to reverse this judgment, alleging that the court erred in taking the case from the jury, claiming that a verdict should have been

instructed for plaintiff, or that the case should have been submitted to the jury under charges requested by plaintiff which were refused.   It is clear to us that it was a case for the jury.   There was evidence tending to show that this car load of lumber had been received by defendant, and by him ordered to be delivered to McKellar.   It is admitted that it arrived at Bangor billed to him, and that he was at once notified.   If the jury believed the evidence of the station agent it could have found that there was an acceptance of the property by defendant, and it would make no difference by whom it had been ordered.   It does not appear except by inference that defendant at the time the order for the lumber was given had knowledge of it; but it is admitted that he received the invoice and at least two or three of the letters written by plaintiff, and the car number given in the invoice was used in a telegram in defendant's name.   As to the many letters written by plaintiff and mailed in due course of business, the presumption is that they were received by defendant.   This presumption may be rebutted by evidence, but whether it was rebutted or not is a question of fact for the jury.   1 Greenleaf on Evidence (15th Ed.), § 40; *Hedden* v. *Roberts*, 134 Mass. 38; *Huntley* v. *Whittier*, 105 Mass. 391.   The same applies to the telegram sent by plaintiff to defendant.

The invoice, mailed January 5, 1903, on its face stated that plaintiff sold to defendant the lumber in question. All of the letters to defendant are of the same import. The invoice and all letters defendant admits he received were turned over to McKellar by him.   The first evidence of any repudiation of the transaction by defendant occurred April 22, 1903, when the draft was refused, and the first writing to that effect was June 15, 1903.   In connection with these facts, the court should have instructed the jury as to the duty resting upon a party to speak when by silence another acting in good faith is misled. Bigelow on Estoppel (5th Ed.), p. 570; *Cleveland Co-*

*Operative Stove Co.* v. *Mallery,* 111 Mich. 43. Also, as to what amounts to the ratification of the unauthorized act of a stranger. *Saveland* v. *Green,* 40 Wis. 438; *Heyn* v. *O'Hagen,* 60 Mich. 150. All of the requests to charge the jury, asked by plaintiff, were drawn in accordance with the views herein expressed, and should have been given substantially as requested.

The judgment is reversed, and a new trial ordered.

CARPENTER, C. J., and GRANT, BLAIR, and MOORE, JJ., concurred.