BAKER v. TEMPLE.

1. SALES—CONTRACTS—QUESTIONS OF LAW AND FACT.
   In an action for breach of a contract of sale of a boat, one party claiming that the price was to be paid in four weeks, the other that it should be paid after his return from a trip to Georgian Bay, the question is one for the jury whose finding is conclusive.

2. SAME—EVIDENCE—PRINCIPAL AND AGENT.
   Testimony concerning a conversation with defendant's agent who had closed a deal between the parties by conversation over the telephone with the defendant, is incompetent when it took place after the making of the sale and was not shown to have been within the agent's authority.

3. SAME—DAMAGES—EVIDENCE.
   On cross-examination of the defendant, it was incompetent to show by him the price he paid several years previously for the boat, which had been subsequently used and damaged.

4. SAME—EVIDENCE—CONTRADICTORY PROOF.
   It was prejudicial error to exclude proof that the intervening purchaser of the boat wrote plaintiff offering the property for the same price agreed upon, although plaintiff testified that he did not receive the letter.

5. SAME—DAMAGES—VALUE—EVIDENCE.
   To affect the question of value, evidence was admissible to show that the boat could not be run profitably.

6. DEPOSITIONS—EVIDENCE—PRACTICE—CROSS-EXAMINATION.
   Where evidence is excluded on defendant's objection as to certain testimony contained in a deposition, the cross-examination upon the same subjects should not be received over the objection of defendant.

Error to Muskegon; Sessions, J. Submitted February 14, 1910. (Docket No. 140.) Decided March 5, 1910.

Assumpsit by John D. Baker against Ansel F. Temple for breach of a contract for the sale of a boat. Judgment for plaintiff is reviewed by defendant on writ of error. Reversed.

*William Carpenter*, for appellant.

*Cross, Vanderwerp, Foote & Ross*, for appellee.

HOOKER, J. Defendant was owner of a steamer known as the "Rudolph." While she lay sunk at a dock in Muskegon, plaintiff made an agreement of purchase for $800. He paid $25 down, and was to pay the remainder at a later date. The parties disagree about the time for the payment; defendant claiming that he was to pay within four weeks, plaintiff that it was to be after his return from a trip to Georgian Bay. Some six weeks later one Moiles purchased the boat from defendant for $800. On learning this, plaintiff tendered defendant the remainder of the price agreed upon by them. Defendant offered to show that, a few days later, Moiles offered to sell plaintiff the boat by letter addressed to him at Detroit, where plaintiff resided, and later he wrote a similar letter to him

addressed in the care of his brother, a prominent business man at Detroit. These letters had notice to return if not delivered upon them, and were prepaid and were never received by the writer. This testimony was excluded. Plaintiff testified that he received neither of these letters, but admitted that two or three months later the defendant offered to deliver the boat to him as contracted, and he refused to take it, saying that he had gone into other business, and did not need it. The plaintiff's declaration made [no claim for special damages, and the court left to the jury upon this subject only the question of the difference between the price and actual value of the boat. The jury rendered a verdict for the plaintiff for $1,225. Judgment followed, and defendant has appealed.

At the threshold of the case is the question: What was the contract? If it was agreed that plaintiff should return and pay the consideration not earlier than one week nor later than four weeks from the day of the agreement, the plaintiff had no right to complain, for it is apparent that he did not return and offer to pay until August 10th, which was a month and seven days, about five weeks and a half. On the other hand, if the agreement was that he should pay upon his return from the trip to Georgian Bay, there was a right to a reasonable time after his return. This was a question for the jury, and they must have accepted the plaintiff's version of the contract, which, of course, we cannot review.

In connection with the proof of the contract, error is assigned upon the admission of certain testimony of the plaintiff. The testimony in the case shows that the contract was made through Dake, who communicated over the telephone, between the plaintiff, who was in his presence, and the defendant, who was at his home, the negotiations, offers, and conclusions of the parties. It culminated in the agreement, the payment of $25, and the giving of a receipt therefor, reading as follows:

"$25.00.                                    7 /3 /1907.
"Received of J. D. Baker twenty-five dollars on account purchase of steamer Rudolph, total price to be $800, balance to be paid when taken.

"A. F. Temple, F. C. W."

Of this transaction plaintiff testified:

"I came to the office, and they said Mr. Temple wasn't there, that he was home, and he wasn't feeling well, and didn't think he would come down, but, if I came to submit an offer, that they would call him up on the phone. I says: 'I got an offer.' They says: 'What is it?' I says: '$800.' Mr. Dake says: 'I don't think he will take that, but,' he says, 'I will call him up anyway.' I says: 'Yes; no harm done,' and so he called him up. Mr. Dake says: 'Mr. Temple said that is pretty small, but he would take $1,000.' I says: 'No, sir; I won't give $1,000. I will just give you $800. My first offer is the only offer.' So he talked to Mr. Temple over the phone again and told him what I said, and he said Mr. Temple said over the phone that he would take $800. 'Now,' I says, 'hold on before you ring off there.' I says: 'I haven't got any money with me, but I will pay $25 down to apply on the purchase price to bind the bargain. I have got to go to Toledo. My boat is there, and maybe I will load in Cleveland, maybe Toledo, maybe Sandusky, and go to Georgian Bay and lumber down, and, as soon as I get down and unload the boat, I will be up and take the Rudolph.' He says: 'How long will that take you?' I says, 'I can't tell you. The last trip I was delayed three weeks, delayed for a tow. That is the reason I was buying the Rudolph, so I won't have those delays.' I says that to Mr. Dake, I says: 'I can't tell you exactly.' So the gentleman behind the desk that is right there took the money. Then they says: 'We will make out a receipt for $25 to apply on the purchase price, and the balance to be paid when taken.' He says: 'That will cover it, so you won't get any limit of time.' I says, 'That is good enough for me,' so he made out the receipt which you have got there."

The plaintiff was then asked:

"*Q.* After you received the receipt, did you have any further talk with Mr. Dake or any one there in the office?

"*Mr. Carpenter:* I don't see that any talk he had with Mr. Dake after he completed the bargain would be material or competent here. It appears Mr. Dake's authority was very limited.

"*The Court:* I think you may answer the question.

"*Mr. Carpenter:* Save an exception.

"*A.* Mr. Dake walked out to the street car track. I believe that turns around there, and he says, ' You can't tell much about what time it will be, then, when you get back on the trip.' I says: ' No; but, just as quick as I get back, I will come right up here and take the Rudolph.' "

The only value of this last testimony is in the inconsistency of this alleged inquiry of Dake with his claim that the money was to be paid within four weeks. The contract was concluded, and this testimony was inadmissible; Dake's authority being limited to the transmission and communicating conversations by telephone. He is not shown to have had any authority to reopen negotiations, and he had no authority to make any admissions, express or implied, and could not bind defendant by anything he might say. It was effective testimony for the plaintiff, and it was clearly injurious to the defendant. The following cases cited by counsel sustain this ruling: *North* v. *Metz,* 57 Mich. 612 (24 N. W. 759); *Maxson* v. *Railroad Co.,* 117 Mich. 218 (75 N. W. 459); *Beunk* v. *Valley City Desk Co.,* 128 Mich. 562 (87 N. W. 793); *Mott* v. *Railway Co.,* 120 Mich. 127 (79 N. W. 3); *Butters Salt & Lumber Co.* v. *Vogel,* 135 Mich. 381 (97 N. W. 757).

The plaintiff's counsel asked defendant, on cross-examination, what he paid for the boat. The record shows that the defendant had purchased the boat several years before, that she had been repaired, and had been run, and had suffered very serious damage after he bought her, so serious that after raising her Moiles found her of little value. The testimony was not admissible. *French* v. *Fitch,* 67 Mich. 492 (35 N. W. 258); *Showman* v. *Lee,* 79 Mich. 653 (44 N. W. 1061).

We are of the opinion that it was error to exclude the proof relating to the letters written by Moiles. It raised a presumption that the plaintiff received them, and it was for the jury to decide whether plaintiff's statement was true, in view of other facts in the case. *Rauch* v. *Insurance Co.*, 131 Mich. 281 (91 N. W. 160); *Long-Bell Lumber Co.* v. *Nyman*, 145 Mich. 477 (108 N. W. 1019, 116 Am. St. Rep. 310); *Rosenthal* v. *Walker*, 111 U. S. 185 (4 Sup. Ct. 382).

It was also erroneous to preclude defendant from proving that the Rudolph could not be run at a profit, as it tended to show that she was less valuable than as though she could be run profitably. The propriety of receiving plaintiff's testimony as to the value of the steamer is open to serious question, as he could see only a portion of the boat, which was nearly submerged. *Michaud* v. *Lumber Co.*, 122 Mich. 305 (81 N. W. 93); *Grabowsky* v. *Baumgart*, 128 Mich. 267 (87 N. W. 891).

A deposition was taken in Detroit in plaintiff's behalf, which, when offered in evidence by his counsel, was excluded so far as the direct examination was concerned, but on cross-examination was admitted. This was error, as it was used as evidence of the very facts that the plaintiff sought to show by the direct testimony.

It is unnecessary to consider other questions.

The judgment is reversed, and a new trial ordered.

MOORE, McALVAY, BROOKE, and STONE, JJ., concurred.