PAUL *v.* CLEMENTS.

1. EVIDENCE—TRIAL—CROSS-EXAMINATION.

On rejecting the direct examination of certain expert wit-
nesses as to the sanity of deceased testatrix, the court
should have excluded their cross-examination, for which
no foundation remained in the case.

2. SAME—TRIAL—REDIRECT EXAMINATION.

It is within the discretion of the trial judge to limit the
redirect examination of an expert to matters developed
on direct examination: the sustaining of contestant's ob-
jection to an explanation on the part of a medical wit-
ness, upon redirect examination, how he reached his con-
clusion as to the insanity of testatrix was not reversible
error, in proceedings for the probate of a will.

3. SAME—WILLS—COMPETENCY.

Excepting witnesses to a will, persons are not allowed to
offer mere opinions as to the insanity or mental incom-
petency of a testator, but conclusions derived from actual
observation and conversation with a decedent are admis-
sible in connection with facts testified to by the witnesses
which have a tendency to support their conclusions.[1]

4. SAME—OPINIONS.

And if all the facts stated by a witness considered as a
whole tend to show unsoundness of mind, the opinion of
the witness may be admitted.

5. WILLS—WITNESSES—EVIDENCE.

Where a neighbor of testatrix who had known her for
more than 20 years gave testimony tending to show that
decedent frequently used vulgar and profane language,
talked in a rambling manner, being nervous and flighty
and of failing memory, that she had complained of pecu-
liar sensations in her head and feared she might be going
crazy, that she told fortunes with cards, declared she had

---

[1] On the question of nonexpert opinions as to sanity and mental
capacity, see note in 38 L. R. A. 721. And for opinion evidence
by nonexpert as to the contractual or testamentary capacity of
another, see note in 37 L. R. A. (N. S.) 591.

made many wills and claimed to hold conversations with her deceased husband and others not living, the court should have permitted the witness to give her opinion concerning the sanity of the testatrix.

Error to Muskegon; Sullivan, J. Submitted April 21, 1913. (Docket No. 98.) Decided July 9, 1913.

Minnie Ham Paul presented for probate the will of Helen E. Sossoman, and on appeal to the circuit court a judgment was entered admitting the instrument to probate. Contestant Emma Clements brings error. Reversed.

*John G. Anderson* and *Slick & Slick,* for appellant.

*Cross, Vanderwerp, Foote· & Ross* and *W. G. Crabill,* for appellee.

STEERE, C. J. Emma Clements, the contestant and appellant herein, is a sister of Helen E. Sossoman, deceased, whose will was admitted to probate in the probate court of Muskegon county on April 9, 1912.

At the time of her death, testatrix was a resident of Whitehall, in said county. The will in controversy was executed by her on June 5, 1906, at the city of Mishawaka, Ind., where she was then residing and had made her home for many years, having previously moved there from Whitehall, to which place she returned, and there resumed her residence not long before her death. At the time she executed this will she was 57 years of age, a widow, and had no children. She had been twice married, and at the time of her death had an estate worth between $5,000 and $6,000, a portion of which she had inherited from her last husband and a portion she had saved by economy and frugality. By the terms of her will she left her property, consisting of personal estate valued at $4,720 and a house and lot in Whitehall valued at $1,200, to

her niece, Minnie Ham Paul, the proponent herein, excepting $300 to her sister, Emma Clements, the contestant herein, and $100 to a niece named Eva Smith. Appellant contested the probation of said will, and appealed from the order of the probate court to the circuit court of Muskegon county, alleging the following reasons why said will should not be probated:

"*First.* Said instrument in writing allowed and admitted to probate is not the last will and testament of said Helen E. Sossoman, deceased.

"*Second.* That said instrument in writing was not executed according to the formalities required by law for the execution of wills.

"*Third.* That at the time of the execution of said instrument so admitted to probate as aforesaid the said Helen E. Sossoman was mentally incompetent to make a will.

"*Fourth.* That the execution of said instrument so admitted to probate as aforesaid by said Helen E. Sossoman was procured by undue influence upon the said Helen E. Sossoman."

The case was tried in the circuit court for Muskegon county before a jury, and a verdict rendered sustaining the will. On the trial in the circuit court appellant based her contention entirely upon the claim that testatrix was insane and mentally incompetent to intelligently execute a will at the time the one in question was made. On said trial proponent in the first instance, to prove the will, introduced the testimony of one subscribing witness, Harvey W. Jones, an attorney of Mishawaka, Ind., who had been testatrix's attorney at Mishawaka and drew the instrument at her request. He gave the requisite testimony to establish the validity of the will in the absence of anything to the contrary, after which proponent rested, and contestant proceeded with a large amount of testimony, raising the question of the sanity and competency of testatrix. The record in this case contains

the testimony, in part at least, of five of contestant's witnesses who testified in the case, two by deposition, and three sworn and examined in open court. Thirty-three assignments of error are based upon the admission or rejection of testimony in connection with their examination. The charge of the trial court does not appear in the record, and therefore no question is raised in relation to the same. The record discloses that besides the five witnesses whose testimony is the subject of inquiry here, contestant produced and examined ten others, residents of Mishawaka, Ind. In rebuttal proponent introduced the depositions of 16 witnesses who were residents of Mishawaka and five witnesses from the same place who were examined in open court, together with six witnesses who were residents of Whitehall, Mich. We therefore get from the record a comparatively small amount of the testimony taken, and little understanding of the merits of the controversy as developed by the evidence of the many witnesses who testified on the necessarily lengthy trial before the jury.

The questions raised involve technical rules of evidence as to the rejection and admission of testimony. Many of them are not of such a nature that, with the record presented, we are able to say the rulings of the court were erroneous; or, if technically tending in that direction, that the possibly technical errors were sufficiently prejudicial to call for a reversal in a case of this kind.

Appellant's assignments of error have been conveniently and correctly grouped by counsel as follows:

"(1) Error of the trial court in sustaining the objection of the attorneys for the proponent to the questions propounded to certain witnesses for the contestant, calling for their opinion as to the competency of the deceased to make the will in question.

"(2) Error of the trial court in sustaining the objection of the attorneys for the proponent to the ques-

tions and answers of certain witnesses for the contestant on cross-examination; the testimony of the witnesses having been taken by depositions at South Bend, Ind.

"(3) Error of the trial court in sustaining the objection of the attorneys for the proponent to certain redirect examination of the expert witness, Dr. Mueller."

The second of these requires but little consideration. If objections to the testimony on direct examination were properly sustained, such testimony was not, and should not be, in the case for the witnesses to be cross-examined upon, and the questions and answers in the depositions, constituting such cross-examination, were properly excluded. *Baker* v. *Temple,* 160 Mich. 318 (125 N. W. 63).

Contestant produced Dr. Wm. D. Mueller as an expert witness, and propounded to him a very lengthy hypothetical question containing a statement of many facts relative to testatrix, including her family history and relations, and incidents of what she had done and said at certain times under certain circumstances, asking his opinion as to her sanity, assuming the facts recited in said question to be true. Witness, having been allowed to answer, against objection, was cross-examined at length upon the subject by counsel for proponent, and re-examined by counsel for contestant, who, amongst other questions, asked the following:

"Now, Doctor, in order to enlighten the jury, I would like to have you explain to them how you arrive, in your practice, at a conclusion as to whether a person is sane or insane, whether it is some detached and single incident or instance, or whether from collected, a collection of incidents or instances."

Objection to this was sustained and error is assigned on such ruling. The question called for no facts, no opinion, and no answer as an expert to any hypothetical question. As introductory matter, or

even in explanation and amplification of his opinion, an answer within certain limits could properly be allowed in the discretion of the court, but the allowance of such questions on re-examination is discretionary, and we cannot say on this record that there was an abuse of discretion.

The most serious question presented is the refusal of the court to allow certain nonexpert witnesses, who were well acquainted with testatrix, and who testified to various peculiar facts and circumstances in regard to her, to express any opinion as to her mental competency. This question has frequently been before the courts of last resort, and in time past has been the subject of much discussion and some diversity of opinion. The decisions of different jurisdictions are not all yet in harmony. While an exception to the general rule, the opinion of nonexperts, where proper foundation of personal knowledge is laid, is allowed in this and most of our sister States. When the issue of *devisavit vel non* is raised it opens, like the issue of fraud, a wide field of inquiry, relaxing in many particulars the more stringent rules of evidence, opening the door for sidelight testimony which in other kinds of litigation would be regarded as too remote. The serious subject of consideration in relation to such evidence in such cases is its weight rather than its competency. Recognizing the difficulty of the ordinary witness communicating to a court and jury a correct understanding of all the many facts and circumstances, great and small, which, to the actual observer, properly lead to conclusions as to the sanity of a person, the witness who has had ample means to observe and form conclusions as to the mental condition of a person, and who testifies to pertinent facts on which his conclusions are based, may supplement the same by stating what such conclusions are, for whatever aid it may be to the jury, who, from all the

testimony, are to ultimately form their own conclusions and decide the issue.

In Buswell on Insanity, §§ 240-243, it is said:

"Except in the case of the attesting witnesses to a will, the mere opinions of persons not experts are inadmissible as evidence upon the question of a party's insanity. But it is held generally in the American courts, when a person's mental condition or capacity is in question, that the opinions of nonprofessional witnesses in regard to such capacity, derived from personal observation of, and conversation with, such person, are admissible in evidence when taken in connection with the facts upon which such opinions are founded. * * * To lay a foundation for the admission in evidence of such opinions, the specific facts upon which the opinions are based must first be stated by the witness, or his testimony must show that such intimate and close relations have existed between the party alleged to be insane and himself as fairly to lead to the conclusion that his opinions will be justified by his opportunities for observing the party. But the mere 'impressions' of one who has had only a passing acquaintance with the party are inadmissible as evidence. * * * Thus it seems that opinions, though admissible with the limitations stated, are only to be considered as of weight so far as they illustrate the character and effect upon the mind of the witness of the facts on which they are based."

The rule is fully recognized in this State in numerous decisions. *Beaubien* v. *Cicotte,* 12 Mich. 459; *Prentis* v. *Bates,* 93 Mich. 234 (53 N. W. 153, 17 L. R. A. 494); *O'Connor* v. *Madison,* 98 Mich. 183 (57 N. W. 105); *In re Hogmire's Appeal,* 108 Mich. 410 (66 N. W. 327); *Lamb* v. *Lippincott,* 115 Mich. 611 (73 N. W. 887); *Page* v. *Beach,* 134 Mich. 51 (95 N. W. 981); *Roberts* v. *Bidwell,* 136 Mich. 191 (98 N. W. 1000); *In re McMaster's Estate,* 163 Mich. 210 (128 N. W. 259). That the rule must be guarded against abuse has also been distinctly stated more than once. In *Page* v. *Beach, supra,* it is said:

176 MICH.—17.

"The practice of proving by a witness two or three instances of tears, forgetfulness, anger, or some other emotion or idiosyncrasy, of doubtful significance, as a ground, and then taking the opinion of the witness (frequently biased) that the person is insane or incompetent or without sufficient understanding or intelligence to do the act in question, is contrary to the rule, as we have often said."

Unquestionably the witnesses must narrate sufficient abnormal or eccentric conduct on the part of the person under inquiry to qualify them to express an opinion, and it is for the court to determine whether or not they have done so.

In the case at bar the court did not allow three of the witnesses whose testimony is given in the record to express an opinion as to deceased's mental condition, on the theory that they had not stated any fact from which insanity could be inferred. It is contended that this ruling is according to the test stated in *Lamb* v. *Lippincott, supra,* wherein it is said:

"Before one is competent to say that another is insane, he must state some fact that is inconsistent with sanity; and this is not done until the witness is able to testify to something that the man has said or done which fairly tends to show insanity."

This language is not to be construed as meaning that a witness does not qualify unless some one distinct fact, considered alone, fairly tends to show insanity, but that all the facts stated by the witness, considered collectively and as a whole, must tend in that direction. In *Beaubien* v. *Cicotte, supra,* it is said:

"In many cases the facts which can be described will be very significant to a jury, while there are many facts susceptible of a different interpretation, from which a jury could obtain no light whatever without the aid of the witness' judgment. The strongest indications of mental weakness or aberra-

tion often exist in expressions and appearances in-capable of reproduction, even by an accomplished mimic; and yet decisive to any intelligent eyewit-ness."  .

The three witnesses referred to are all shown to have lived near, and been well acquainted with, de-ceased for years, to have had such relations with and knowledge of her as to give full opportunity to judge and form conclusions; they all related specific facts which, taken together, denoted eccentricity more or less pronounced, appealing to them as indication of mental unsoundness. Whether their conclusions were well founded was a fair question for the jury, but they were not strangers with limited means of obser-vation and but a passing knowledge, as in the case of *Page* v. *Beach, supra,* where the witness was allowed to express an opinion after having seen deceased but once, and for a short time. While the testimony of two of the witnesses in question is of such a nature that there might be room for debate as to whether or not the facts they related clearly tended to show insanity and consequently the rejection of their opinions reversible error, we are constrained to con-clude, under the authorities referred to, that the wit-ness Mary Scheibelhute clearly qualified to express an opinion and contestant was entitled to her answer. She had known testatrix from 20 to 22 years, seeing her frequently and living for some years a next door neighbor, visiting back and forth, was well acquainted and familiar with her, and testified, among other things, to her talking in a rambling manner, jumping from one subject to another; that she was nervous and flighty; that she told of having fallen upon her head some years before, and in telling of it said she had "nearly broken her d—n neck;" that she would not care if she had as her head felt mean, and she believed she was going crazy; that she was in the

habit of telling fortunes with cards and talking extravagantly about her property and her wills, stating in that connection she thought she was losing her mind; that she had made so many wills she could not tell the number—had made one in favor of William Ham, and one in favor of Jim Clements, and one in favor of Minnie Ham, and then said, "Good G—d, I don't know how many more wills I will make;" that she told of having seen and talked with persons who were dead; that, on one occasion, she told witness she had talked with Bill Guyer, her former husband, who had then been dead 10 or 12 years, and stated that he had admonished her "to take care of the children," though they had never had any children; that she was apparently offended at her dead husband's remarks about children, and stated that if she had him then available she would "kick him all over hell," and when witness expressed doubts of the actuality of the interview related replied she did not care whether witness believed it or not, that she "knew what she knew;" that during the years witness knew her her memory failed materially, and she became more rambling in her talk, did not tell a story twice alike, and as she grew older it seemed harder for her to understand anything said to her.

We think that the witness testified to sufficient facts to justify the alleged inference of incompetency and qualified as a nonexpert opinion witness.

The judgment must be reversed, and a new trial granted, with costs in favor of contestant.

MOORE, McALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.