PORT HURON ENGINE & THRESHER CO. *v.* BLOOM.

TRIAL—CROSS-EXAMINATION—BILLS AND NOTES—PAYMENT.

In an action on promissory notes of the defendants, who claimed that the notes were to be canceled as part of an arrangement for the exchange of one threshing engine for a larger or more powerful type, and that they had previously possessed other machines which they had exchanged with the defendant, for different ones in a similar manner, it was erroneous for the court to decline to permit the attorney for the seller to cross-examine defendant relative to the earlier purchases and the amount paid thereon, also, as to the amount owing on other paper during the period involved in the consecutive transactions, the testimony being very sharply in conflict and the issue being as to the truth of defendant's statements: under such conditions the cross-examination should be given a liberal range.

Error to Shiawassee; Miner, J. Submitted October 8, 1914. (Docket No. 34.) Decided December 18, 1914.

Assumpsit by the Port Huron Engine & Thresher Company against Melvin Bloom and others for the amount of two negotiable instruments. Judgment for defendants. Plaintiff brings error. Reversed.

*John T. McCurdy* and *Walter M. Bush,* for appellant.

*Pulver & Pond,* for appellees.

STEERE, J. Plaintiff brought this action in assumpsit in the circuit court of Shiawassee county on two promissory notes given it by defendants, dated February 12, 1909, one for $100, due December 15, 1911, and the other for $110, due March 15, 1912. It was agreed between counsel at the time of the trial that

these notes amounted, with interest, to $274.81.   Defendants pleaded the general issue, giving notice thereunder of matters of special defense, to the effect that the notes had been fully paid on July 6, 1909, at which time defendants traded back an engine, for a portion of the purchase price of which said notes were given, and entered into another contract with plaintiff for the purchase of a new and larger engine, giving therefor, in addition to the old one, three notes of $200 each, with the express understanding that the two notes sued upon were settled and satisfied, and would be canceled, and that they have paid the three $200 notes in full.   The issue before the court was whether these two notes of February 12, 1909, were settled and satisfied by the terms of the last contract of purchase.

The defendants are brothers.   They were engaged in the business of farming and threshing.   At the time of their first dealing with plaintiff they resided in Isabella county.   During the past three years they have resided in Shiawassee county.   Their activities in the business of threshing were carried on under a partnership arrangement.   In 1906 they purchased of plaintiff a threshing outfit, described in the chattel mortgage given thereon as a Port Huron Rush separator complete, with straw stacker, belts, fixtures, etc., belonging to the same, a 14-horse power steam traction engine complete, with hose, fixtures, and appendages belonging to the same, one main drive belt, a water tank on trucks, canopy top, etc., giving notes secured by said mortgage in payment therefor.   They made two subsequent deals with plaintiff for the purpose of getting larger engines, in which new chattel mortgages were given upon that part of the threshing outfit previously purchased and the new engines then traded for, in form clearly indicating that each mortgage was to secure the purchase price of all property

therein described, as though simultaneously purchased. They made the second deal with plaintiff on February 12, 1909, exchanging their 14-horse power engine for a 16-horse power, and as part of its purchase price gave the two notes now sued upon, giving a new chattel mortgage to secure deferred payments. This second mortgage described the purchase in terms practically identical with those in the first, varied to conform with the new date, increased horse power of the new engine, amounts to be paid, etc., listing and describing as in the first the separator, straw stacker, water tank, canopy top, etc., with the engine just purchased, under a general introductory recital that "said parties of the first part have purchased the property hereinafter described from the party of the second part." On July 6, 1909, the three brothers went to Port Huron and exchanged their 16-horse power engine for a 19-horse power. A new chattel mortgage was again given in the same form and describing under the same general recital all property constituting the threshing outfit as in the other two, varying only as to date, power of engine, amount, and terms of payment. The amount and terms of payment were stated in this last chattel mortgage as follows:

"The sum of eleven hundred and ten dollars, with interest at the rate of seven per cent. per annum, according to the terms of seven certain promissory notes signed by Bloom Bros., and payable to the Port Huron Engine & Thresher Company, or order, as follows, viz.:
   "$150 dated Aug. 24, 1906, due Nov. 15, 1909.
   "$150 dated Aug. 24, 1906, due Jan. 15, 1910.
   "$100 dated Feb. 12, 1909, due Dec. 15, 1911.
   "$110 dated Feb. 12, 1909, due March 15, 1912.
   "$200 dated July 6, 1909, due Nov. 1, 1910.
   "$200 dated July 6, 1909, due Nov. 1, 1911.
   "$200 dated July 6, 1909, due Nov. 1, 1912."

It will be observed that the two notes here in litigation are included in the above; the others enumerated are not in controversy. Defendants on the trial claimed and testified that by the terms of their last agreement they were to return the formerly purchased 16-horse power engine and receive a new 19-horse power, paying therefor an additional $600, for which notes were to be given; that plaintiff was to cancel and destroy the two notes here sued upon, aggregating $210, which had been given on the previous exchange of engines, and which had not yet been paid.

In explanation of why these notes were not then canceled and surrendered to them, defendants testified that when the terms of the agreement were finally reached it was close to the time for departure of the train by which they intended to return home from Port Huron; that plaintiff's agents with whom they dealt then informed them the notes were over in a bank, but would be subsequently canceled and sent to them; that relying upon this, and being desirous of catching their train, they signed the papers and hurriedly departed. The negotiations were had with a factory salesman and the assistant sales manager of plaintiff, who positively denied any understanding or agreement that the notes in question should be canceled or surrendered, or any talk to that effect, and testified that the chattel mortgage was understandingly signed, was in harmony with the terms of the sale, and that the dates when the three $200 notes fell due were fixed at defendants' request with special reference to the $150 note and the two notes in question, so that no two would fall due together.

The two agents of plaintiff and the three defendants were the only witnesses. Their testimony was in direct conflict, positively affirming on the one side and as positively denying on the other. Under such conditions cross-examination should be allowed a liberal

range, and any pertinent sidelight evidence which might have a bearing upon the probability of one story or the other and tend to aid in finding where the truth lay was competent. Plaintiff's most meritorious complaint and assignments of error relate to restrictions imposed upon it in that line of inquiry. Claiming the right to go into the details of this connected series of transactions relative to engines purchased and exchanged, and particularly as to the amount defendants had actually paid upon the 16-horse power engine, for the purpose of ascertaining their real interest or equity therein, plaintiff's counsel asked, amongst others, the following questions in cross-examination, objections to which were sustained:

"Witness, did you, on the 24th day of August, 1906, for the purpose of securing to the Port Huron Engine & Thresher Company, the plaintiff in this case, make and execute to it a chattel mortgage growing out of the purchase of the 14-horse power engine?

"How much money have you paid to the plaintiff in this case upon the 16-horse power engine?

"At the time you purchased the 16-horse power engine, which was on the 12th day of February, 1909, how much money, if any, did you pay down upon that engine?

"Besides the three notes, of $200 each, were you also owing the company upon four other notes?

"How much were you owing altogether to the plaintiff company on the 6th day of July, 1909?"

The objections most persistently urged by defendants against this line of questions were that the same was incompetent, immaterial, and related to a separate and distinct transaction, which occurred some years before the one in litigation.

Without going further into the details of this series of objections and rulings, it is sufficient to state that plaintiff, under the sharp contradictions which had arisen between witnesses, should have been allowed, especially in cross-examination, to inquire into all the

circumstances of the consecutive transactions in purchase and exchange of these engines, and in that connection show any related facts which might have a logical tendency to support the probability of the story of its witnesses, or weaken that of defendants, as to what the last agreement was. The court distinctly held that plaintiff could not show how much defendants had paid upon the 16-horse power engine, though the amount they owed was allowed to be inquired into. Defendants were contributing in value to apply on the price of the 19-horse power engine their equity in the old, and what they had paid upon it was material in ascertaining the value of that equity, which, with the three $200 notes, was claimed to be the agreed price of the one last purchased. These payments, as bearing upon relative values, were proper questions to investigate, and for the jury to consider in determining which of the parties was entitled to the greater credibility. Full inquiry should have been allowed in that connection. We are constrained to hold that, under the principles recognized in *Banghart* v. *Hyde*, 94 Mich. 49 (53 N. W. 915), *Grabowsky* v. *Baumgart*, 128 Mich. 267 (87 N. W. 891), and *Aldrich* v. *Scribner*, 146 Mich. 609 (109 N. W. 1121), the exclusion of these questions must be regarded as prejudicial error.

The judgment is reversed, and a new trial granted.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.