*In re* SPARKS' ESTATE.

HODGMAN *v.* SEARS.

1. EVIDENCE—ADMISSIBILITY—WITNESSES, CREDIBILITY OF—CROSS-EXAMINATION.

In a will contest the admission of evidence on cross-examination of one of the contestants and her former husband that a short time prior to the death of the husband the latter took his aged father to his home and procured a deed to himself of all the father's property, and the wife received a deed of part of the property from the husband, and, after the father's death, such deed was set aside in proceedings for its cancellation by other children, for the purpose of showing the character of the witnesses, was not prejudicial error.

2. WITNESSES—CROSS-EXAMINATION—DISCRETION OF COURT.

In order that the jury may get a proper appreciation of the fairness and reliability of the testimony of witnesses, considerable latitude is generally allowed in the cross-examination of witnesses, the extent of such cross-examination being a matter left largely to the discretion of the trial court.

3. WILLS—MENTAL COMPETENCY—UNDUE INFLUENCE — WITNESSES —EVIDENCE.

Where a witness in a will contest, a banker, showed by his testimony that he had met decedent on the average of twice a week during a period of ten years preceding testator's death and had observed him in various business transactions in the bank, it was not error to allow witness to testify that decedent was the equal of the average business man and could not be influenced in business transactions against his will.[1]

4. TRIAL—EXCLUSION OF WITNESSES FROM TRIAL—WILLS—DISCRETION OF COURT—ABUSE OF DISCRETION.

Where, by a consent order, all unsworn witnesses were excluded from the court room during a will contest by

[1] On the question of admissibility in evidence of expert opinion as to sanity and mental capacity, see comprehensive note in 39 L. R. A. 305; 42 L. R. A. 767.

the order of court, and, after counsel for legatee stated that they desired that the latter be allowed to remain in court for the purpose of assisting counsel in the cross-examination of witnesses and that he would not be called for direct examination, and offered to allow him to be cross-examined at once, there was no abuse of discretion by the trial judge in not modifying the order as to the legatee.

5. EVIDENCE—WILLS—FAILURE OF LEGATEE TO TESTIFY—PRESUMPTIONS.

The benefit of the presumption arising from the failure of the legatee to take the stand and testify in his own behalf in a will contest may not be claimed by contestants, where, after a consent order for exclusion of witnesses is made, it is announced that the legatee will not be offered as a witness, and opportunity is given contestants to cross-examine him, which is not done, and it is claimed that legatee's presence in court is necessary and that by his remaining under a modified order of the court he can no longer be called to the witness stand without the consent of the contestants, since the contestants, by their actions, foreclosed him from so doing.

6. SAME—ADMISSIBILITY—WILLS—STATEMENTS OF TESTATOR—UNDUE INFLUENCE.

In a will contest statements of the testator are inadmissible to show undue influence, but are admissible to show the effect that such undue influence had upon the testator in respect to making of the will.

Error to Branch; Knowlen, J. Submitted June 25, 1917. (Docket No. 57.) Decided September 27, 1917.

Willis E. Hodgman presented for probate the will of John Sparks, deceased. The will was allowed in the probate court, and Esther Sears and others appealed to the circuit court. Judgment for proponent, Contestants bring error. Affirmed.

C. C. Johnson and L. F. Humphrey, for appellants.

H. H. & B. E. Barlow and Palmer, Palmer & Palmer, for appellee.

KUHN, C. J. This is a contest over the will of John Sparks, deceased. The probate of the will is contested by Emma Wright and others of his children who were dissatisfied with its provisions, as by its terms the bulk of the estate was willed by the testator to his son, Edgar. The reasons filed for contesting the will were, in substance, that the testator was mentally incompetent to make the purported will, and also that the instrument was obtained and executed through undue influence exerted upon the testator by his son, Edgar. The only question, however, submitted to the jury was that of undue influence, and upon this question the verdict was against the contention of the contestants and the trial resulted in the will being sustained.

The first group of assignments of error have reference solely to the admission of testimony of witnesses. From the examination of Sarah Wright Brooks, one of the contestants, and her former husband, Jerome Wright, it was made to appear that, within a short time previous to his death Jerome Wright brought his father, a man upwards of 90 years of age, to his home, and there secured from him a deed of all of his father's property; that his wife obtained a deed of 45 acres of this land from her husband; that his father lived seven weeks; and that after his death the other children in the family filed proceedings to set aside the deed, and, after a hearing in court, their contention was sustained. The purpose of this cross-examination was to show the character of the witnesses, and to our minds, in view of the claims made by the contestants in this case and the testimony given by these witnesses, the admission of this testimony was not prejudicial error. In order to get to the jury a proper appreciation of the fairness and reliability of the testimony of witnesses, considerable latitude has always

been allowed in the cross-examination of witnesses, and the extent of such cross-examination is a matter left largely to the discretion of the trial judge. In this case we do not think that this discretion was abused. See *Wilbur* v. *Flood*, 16 Mich. 40 (93 Am. Dec. 203) ; *Wolverton* v. *Village of Saranac*, 171 Mich. 419 (137 N..W. 211) ; *Totten* v. *Totten*, 172 Mich. 565 (138 N. W. 257).

Other assignments of error relate to the admission of the testimony of Milton W. Wimer. The question which was asked, and the answer which was allowed to stand, which are the subject of complaint, are as follows:

"*Q*. Now, would you judge him to be a man who could be influenced in any business transaction against his will?

"*A*. I should say no ; he was the equal of the average business man."

Before this answer was received, it was made to appear that Mr. Wimer was connected with the bank in which Mr. Sparks did business, and that for a period of ten years and upwards he had seen him as often as twice a week, and had observed him in the transaction of various business matters at the bank, and had had opportunity to observe the general firmness of his mind from a business standpoint. It was not error to allow the witness to testify as he did, after stating the facts upon which his opinion was based. *Paul* v. *Clements*, 176 Mich. 251 (142 N. W. 384).

During the trial, by a consent order, all witnesses who had not been sworn were excluded from the court room by the order of the trial court. The record discloses that the following occurred:

"*Mr. Johnson:* Now, this order, as I understand it, applies to the legatee, Mr. Sparks?

"*The Court:* Yes.

"*Mr. Palmer:* Under our theory of this case, Mr. Sparks is not a competent witness on any question that we would want to call him upon. I do not think that legally he can testify; therefore we shall not put him on the stand. Our theory is that he cannot be sworn as a witness; therefore he won't be called as a witness by us.

"*The Court:* All right. You better look after it, gentlemen, and see that the witnesses who are affected by the consent order understand it.

"*Mr. Humphrey:* If the court please, we, as contestants here, may, and probably will, desire to call Ed. Sparks upon the stand, if he is not put on, and I understand he is not to be, by the proponent, and we ask that he be excluded from the room.

"*Mr. Palmer:* Your honor, it is necessary in the cross-examination of these witnesses to have Mr. Sparks to assist in the trial of this case. If they want to call Mr. Sparks for cross-examination, they may. We consent that they may call him now.

"*Mr. Humphrey:* We will not do it now at the present time the way the testimony stands. We are not determined fully on the subject.

"*The Court:* That puts this thing in a somewhat embarrassing situation. I am not prepared to say just what the court should do under the circumstances. It is a novel proposition you have here.

"*Mr. Humphrey:* Under our consent I supposed we had it arranged.

"*The Court:* You now announce that you may call him.

"*Mr. Humphrey:* Yes.

"*Mr. Palmer:* Then he will be a witness for them, and not us.

"*Mr. Barlow:* We waive the privilege as far as he is concerned.

"*The Court:* Yes; I understand that. I think I will deny that motion, Mr. Humphrey.

"*Mr. Humphrey:* Then is the further motion denied?

"*The Court:* What further motion?

"*Mr. Humphrey:* Then will the further order be set aside as to the other witnesses?

"*The Court:* No, sir; just with respect to Mr. Sparks here."

It is claimed that this ruling of the trial judge was erroneous and prejudicial. The conduct of the trial must, as we have often said, be left largely to the sound discretion of the trial judge. He has the opportunity to observe the character of the witnesses, and is thus enabled to determine what action should be taken under the circumstances to best further the ends of justice. By his action in this case the contestants were not deprived of any substantial right, as they had the opportunity to examine Edgar Sparks immediately after the order of exclusion was made, but this they did not see fit to do. We are of the opinion that it was within the sound discretion of the court, the order having been entered, to determine, taking into consideration all the facts and circumstances before him, whether the order which had been made should be set aside or not. We think that he acted properly under the circumstances.

The court gave the following request to charge:

"The court instructs you that under the laws of this State the contestants to the will in this suit, or any of them, had the right to call Edgar Sparks to the stand as a witness and cross-examine him the same as if he had been called as a witness or taken the stand in his own behalf, and that when so called by the contestants they would not have been bound by his testimony as given. You are therefore further instructed that his failure to take the stand and testify in his own behalf raised no presumption against him or against any testimony that he might or might not have given"

—and refused to give the following of the contestants' requests to charge:

"Contestants request the court to charge the jury as follows: 'It is the privilege and right of the proponent and all persons interested in this contest as heirs at law or legatees to take the stand and testify to such matters as are within their knowledge and involved in this case or connected therewith.

" 'It is claimed on the part of the contestants of this will that that portion of the will making Edgar Sparks the residuary legatee thereof and giving him the greater portion of said estate was made by John Sparks, deceased, through the coercion, duress, threats, and undue influence of said Edgar Sparks, and testimony has been given you upon that subject which you have heard; and I charge you that Edgar Sparks had the right to take the stand in his own behalf and testify to such things within his knowledge as would refute or explain the testimony that has been offered and the charges made against him. He having failed to take the witness stand or make any explanation of the testimony offered and the charges made against him, this being a civil case, his silence and refusal to take the stand raises a strong presumption of the truth of such charges, and must be construed most strongly against him. *Warren* v. *Holbrook*, 95 Mich. 185 (54 N. W. 712, 35 Am. St. Rep. 554).' "

Testimony was admitted to show that Edgar Sparks was accused of many things, the purpose being to show the state of mind of his father toward him and the relations that existed between them. With reference to the refusal of the court to give the request presented, it should be borne in mind that, after the consent order excluding witnesses was made, it was announced that Edgar Sparks would not be offered as a witness by the proponent, and the opportunity was given contestants' counsel to cross-examine him, if they so desired, which was not done; also that proponent's counsel claimed that his presence in court was necessary in order to enable them to consult with him during the progress of the trial, and that by his remaining, under the order of the court, he could no longer be called to the witness stand without the consent of the contestants. Under these circumstances we do not think that the contestants should claim the benefit of the presumption arising from the failure of the legatee to take the stand, when by their action they foreclosed him from so doing.

Complaint is made to the charge of the court with reference to certain alleged statements of the testator, made in the presence of some of the contestants. The court stated, in substance, that these statements of the testator were not admissible to show undue influence, but were admissible to show the effect that such undue influence had, if any, upon the testator in respect to the making of the will. In this the trial court seems to have followed the rule announced in *Bush v. Delano,* 113 Mich. 321 (71 N. W. 628), and *Zibble v. Zibble,* 131 Mich. 655 (92 N. W. 348).

It has not been made to appear that prejudicial error was committed by the court in the trial of this case, and we therefore affirm the judgment.

STONE, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.